Kenneth SIMMS, Plaintiff,

v.

Michael ASTRUE, Commissioner of the Social Security Administration, Defendant.

Cause No. 2:08–CV–00094–PRC.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 30, 2009.

Barry A. Schultz, Law Offices of Barry A. Schultz PC, Evanston, IL, for Plaintiff.

Orest S. Szewciw, Wayne T. Ault, U.S. Attorney's Office, Hammond, IN, for Defendant.

## OPINION AND ORDER

PAUL R. CHERRY, United States Magistrate Judge.

This matter is before the Court on a Complaint [DE 1], filed by the Plaintiff, Kenneth Simms, on March 20, 2008, and a Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE 16], filed on July 29, 2008. Plaintiff Simms requests that the Court reverse and remand the Administrative Law Judge's decision denying Plaintiff's claim for Supplemental Security Income ("SSI"). On October 16, 2008, the Commissioner filed a Memorandum in Support of the Commissioner's Decision. On November 25, 2008, Plaintiff filed a Reply Brief. For the following reasons, the

Court remands this matter for further proceedings consistent with this Opinion and Order.

## PROCEDURAL BACKGROUND

On January 22, 2004, Plaintiff Simms filed an application for SSI benefits, alleging a disability onset date of September 30, 2001. Plaintiff's application was originally denied on June 3, 2004, and also upon reconsideration on August 11, 2004. On September 16, 2004, Plaintiff filed a timely request for a hearing. Administrative Law Judge Shirley Michaelson ("ALJ"), held a hearing on December 27, 2005, and a supplemental hearing on November 8, 2006, issuing an unfavorable decision on December 26, 2006. Plaintiff filed a timely request for review and the Social Security Administration Appeals Council denied the request on January 25, 2008, leaving the ALJ's decision as the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was thirty five years old at the time of the ALJ's decision and has a high school education.

### B. The December 27, 2005 Hearing

On December 27, 2005, the ALJ held a hearing, via videoconference from Orland Park, Illinois, at which Plaintiff, his attorney Thomas J. Scully, Lee Knutson, Dr. James McKenna, and Donna Sales appeared, in person in Gary, Indiana.

At the hearing, Plaintiff testified that he occasionally had difficulty walking, as a result of injuries to his right leg sustained from a gunshot wound in 2005, and, although he had crutches, he did not use them. Plaintiff testified that he was in special education classes during high school primarily due to his hearing difficulty and had not used a hearing aid since then because he had not been able to obtain another one. Plaintiff further testified that he previously worked as a dishwasher but stopped doing so because the steam from his work environment triggered his asthma. Plaintiff stated that his asthma is not triggered in clean environments, but is triggered with pollution and hot weather. Plaintiff also testified that he did not use his inhaler every day, but rather, only when he needed it. According to Plaintiff, the last time he was hospitalized because of his asthma was approximately before the summer of 2003.

At the hearing, the Medical Expert, Dr. McKenna, testified that he did not know the outcome of Plaintiff's right leg injury because of a lack of orthopedic follow-up records. Further, Dr. McKenna testified that Plaintiff's left ear had no hearing and that there was deterioration of hearing in the right ear due to a conduction problem.

The ALJ then decided to schedule a supplemental hearing and sent Plaintiff out for psychological and physical consultative examinations.

### C. The November 8, 2006 Supplemental Hearing

On November 8, 2006, the ALJ held a supplemental hearing via videoconference from Orland Park, Illinois, at which Plaintiff, his attorney Thomas J. Scully, Vocational Expert Thomas Dunleavy ("VE"), and Medical Expert Dr. Robert Marquis appeared, in person in Gary, Indiana.

### 1. Plaintiff's Testimony

At the Supplemental Hearing, Plaintiff testified that he continued to have leg pain. However, Plaintiff also testified that he walked twenty blocks to a bus stop without a cane to get to the Supplemental Hearing, but also stated that he suffered from pain when he walked. Plaintiff further testified that he was able to go grocery shopping and lift a bag of groceries and a gallon of milk without assistance. Plaintiff stated that he is unable to work because of his hearing difficulty and indicated that he could perform a light industry job where he did not have to deal with people, and could benefit from standing up. Plaintiff also testified that his asthma was "pretty calm." R. at 454.

### 2. Medical Evidence

On October 27, 1994, Plaintiff underwent an intelligence test on which he scored an IQ of 72 on the verbal, 81 on the performance, and 75 on the full scale. Plaintiff was diagnosed with borderline intellectual functioning.

In December 2003, Plaintiff was hospitalized after being in a car accident. Plaintiff underwent tests that showed no acute abnormalities.

On May 12, 2004, Dr. Herbert White, M.D., examined Plaintiff at the request of the Disability Determination Office of the Social Security Department. Dr. White noted that Plaintiff had asthma since 1995 and experienced attacks when he was exposed to steam or when it was hot. According to Dr. White's Medical Report, Plaintiff last experienced an asthma attack in the summer of 2003. After examining Plaintiff, Dr. White indicated that Plaintiff had decreased hearing and required a hearing aid, his asthma was mild in severity and his respiratory system was normal at the time of the examination, and he had mild abdominal tenderness. Later, two physicians for the Indiana Disability Determination Bureau ("state agency") reviewed the record and indicated in their Physical Residual Functional Capacity Assessment that Plaintiff would have to avoid concentrated exposure to various environmental limitations, including extreme cold and heat, noise, and vibration due to his history of asthma.

In July 2005, Plaintiff was shot in his right leg and experienced a fracture of the femur. After undergoing surgery, Plaintiff was released a week later.

On May 1, 2006, Dr. Gregory C. Rudolph performed a psychological consultative exam at the ALJ's request and, in a written assessment dated May 5, 2006, diagnosed depression secondary to medical condition and hearing loss, and assessed very significant hearing loss. Further, Dr. Rudolph assessed that Plaintiff could not understand someone who is talking unless he looks directly at them. Dr. Rudolph also noted that Plaintiff's IQ scores were 72 for verbal, 87 for performance, and a full scale of 77. In his functional assessment form, Dr. Rudolph opined that Mr. Simms had "marked" limitations in the ability to: understand and remember short, simple instructions; carry out short, simple instructions; understand and remember detailed instructions; and carry out detailed instructions. Dr. Rudolph indicated that his opinion was based on Plaintiff's severe hearing loss.

On June 5, 2006, Dr. J. Smejkal examined Plaintiff at the state agency's request. Dr. Smejkal assessed pain in Plaintiff's right lower knee with restricted range of motion, and that Plaintiff could walk heel to toe and tandem walk with difficulty. Dr. Smejkal further assessed that Plaintiff could stoop and squat with difficulty and that Plaintiff had very poor hearing capabilities.

Dr. Smejkal completed a functional assessment form and noted that Plaintiff could lift or carry twenty pounds occasionally and frequently; he had no limitations in standing or walking but indicated that Plaintiff could stand or walk for at least two hours in an eight hour workday; and that Plaintiff had no limitations with sitting, but Plaintiff could only sit for about six hours in an eight hour workday. Dr. Smejkal also noted that Plaintiff had limited ability to push and/or pull with his legs because of his gunshot wound, and he could occasionally engage in postural movements such as climbing, balancing, kneeling, crouching, crawling, and stooping. Dr. Smejkal found that Plaintiff had unlimited environmental limitations.

### 3. Testimony of Dr. Marquis and the VE

At the Supplemental Hearing, Dr. Robert Marquis, a psychiatrist, testified as the Medical Expert. Dr. Marquis reviewed the record and testified that Dr. Rudolph's functional assessment of Plaintiff was not supported by Dr. Rudolph's report. Dr. Marquis testified that Plaintiff's impairments did not meet or equal a listed impairment and specifically testified that he was familiar with Listing 12.05, but focused his testimony on Listing 12.04. The ALJ asked Dr. Marquis about Dr. Rudolph's report and Dr. Marquis indicated that the record did not support Dr. Rudolph's opinion. Dr. Marquis testified that Dr. Rudolph's finding that Plaintiff was markedly limited in simple tasks was not supported by the record. Dr. Marquis opined that Plaintiff had a moderate impairment in social functioning and a moderate limitation in concentration, persistence, or pace, and could handle a repetitive, low-skilled, simple-task job. Dr.

Marquis based his opinion on Dr. Rudolph's report that Plaintiff could take care of himself and his personal needs. Since Plaintiff could do laundry, Dr. Marquis concluded that he could also operate a machine.

Dr. Marquis further testified that he did not know the basis for Dr. Rudolph's "marked" limitations findings and the only reason he did not think much of Dr. Rudolph's report, despite relying on it throughout his testimony, was because Dr. Marquis did not know how Dr. Rudolph came up with the "marked" limitations. Nonetheless, Dr. Marquis testified that Dr. Rudolph's narrative report "sounds good, sounds reasonable." R. at 478.

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's vocational profile who could perform repetitive simple tasks which entailed limited contact with other people and, due to his hearing problem, needed to be spoken to directly, face-to-face. The ALJ also limited the hypothetical individual to lifting no more than twenty pounds frequently and occasionally, and could stand for at least two hours. The VE testified that the hypothetical individual could perform work as a compact assembler (3,000 jobs available; DOT [1] # 739.687–066) and packager (4,000 jobs; DOT # 920.685–026) in the plastics industry.

The ALJ then asked the VE to consider the same hypothetical individual but who could stand most of the day. The VE identified jobs as a bottle packager (8,000 jobs) and assembler (7,000 jobs).

The VE further testified that the compact assembler position in the DOT is described as light work but that, based on his experience and discussion with other vocational experts, he identified sedentary jobs

---

1. The Dictionary of Occupational Titles ("DOT") is published by the Department of Labor and provides detailed physical requirements for a variety of jobs.

in this category. The VE did not identify any other inconsistency between his testimony and the DOT and the ALJ did not ask if any other conflict existed.

### D. ALJ's Decision

The ALJ found that Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date. The ALJ concluded that Plaintiff had the following severe impairments:

> [S]evere bilateral hearing loss, with a history of special education due to the hearing loss; borderline intellectual functioning, with a possible special educational background due to learning deficits; an affective mood disorder; and right leg and knee pain following a gunshot wound to the right leg in July 2005.

R. at 25.

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled simple repetitive tasks, and can interact appropriately with the general public, supervisors and coworkers on only a limited basis. Further, Plaintiff could lift and carry objects weighing up to twenty pounds, both occasionally and frequently. Plaintiff was able to sit, stand or walk in any combination in an eight-hour workday and could use foot and leg controls no more than one-third of a day, due to his right leg and knee pain. Because of Plaintiff's bilateral hearing loss, the ALJ concluded that he needed to be spoken to directly, face to face.

The ALJ further found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible or supported by the overall medical evidence of record, particularly not by the post hearing medical evidence...." R. at 27.

The ALJ gave "limited weight" to the examinations and reports prior to Plaintiff's 2005 gunshot wound and gave "controlling weight" to Dr. Smejkal's consultative assessment. The ALJ noted the inconsistency in Dr. Smejkal's consultative assessment between his finding that Plaintiff could walk at least two hours but had no walking limitation, and in finding that Plaintiff could only sit for about six hours, but also finding that his sitting was unaffected. The ALJ resolved these inconsistencies by finding that the objective findings did not support any limitations and Dr. Smejkal meant that Plaintiff had no limitations in standing/walking or sitting. In further support of the ALJ's resolution, the ALJ cited the Plaintiff's testimony that he "walked twenty blocks without a cane to get to the bus that he took to get to the hearing, and did not appear to be in any particular distress during the hearing." R. at 29.

The ALJ gave "little weight" to Dr. Rudolph's assessment of Plaintiff's level of mental ability to perform work-related activities because Dr. Rudolph indicated that he found marked deficits in Plaintiff's ability to understand instructions and interact with others on the basis of his hearing loss, not his claimed mental impairments. The ALJ then gave "greater weight" to Dr. Rudolph's written evaluation of Plaintiff and gave "greatest weight" to the testimony of Dr. Marquis because he reviewed the record and helped reconcile discrepancies contained therein. Consistent with Dr. Marquis' testimony, the ALJ then found that Plaintiff had moderate limitations in maintaining social functioning and maintaining concentration, persistence, and pace.

After considering the Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could per-

form. Accordingly, the ALJ concluded that Plaintiff was not disabled.

## STANDARD OF REVIEW

█ The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir.2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir.2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

█ A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir.2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir.1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir.2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997).

█ An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir.2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir.1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir.2001). The ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995 (7th Cir.2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir.1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his

previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(iv); see also Scheck v. Barnhart, 357 F.3d 697, 699–700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." Young, 362 F.3d at 1000. The ALJ must assess the RFC based on all relevant evidence of record. Id. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. Id. at 1000; see also Zurawski, 245 F.3d at 886; Knight v. Chater, 55 F.3d 309, 313 (7th Cir.1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by: (1) failing to consider whether Plaintiff's impairments equaled Listing 12.05; (2) reaching an erroneous RFC finding, specifically: improperly analyzing discrepancies in Dr. Smejkal's report, improperly weighing the medical source opinions, improperly rejecting Dr. Rudolph's psychological assessment, failing to recontact Dr. Rudolph and Dr. Smejkal, finding that Plaintiff's asthma was not a severe impairment and failing to consider its impact on Plaintiff's RFC, and failing to include Dr. Smejkal's assessed postural limitations in the RFC; (3) failing to resolve apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (4) failing to ask a complete hypothetical to the VE. The Defendant argues that the ALJ's findings are supported by substantial evidence and that the ALJ complied with the relevant legal requirements.

### A. Analysis of Whether Plaintiff's Impairments Equaled a Listing Level Impairment

■ Plaintiff contends that the ALJ erred by failing to consider whether his impairments equaled Listing 12.05. The listings describe impairments that are considered to be presumptively disabling when specific criteria are met. See 20 C.F.R. § 404.1525(a). To meet or equal a listed impairment, a claimant must satisfy all of the criteria set forth in the listing.

*Martz v. Astrue,* No. 1:07–CV–00219, 2008 WL 975051, *7 (N.D.Ind. April 8, 2008). The claimant solely has the burden of proving that his condition meets or equals a listed impairment. *Id.* However, the Seventh Circuit has provided that even though the burden of proof rests with the claimant, the ALJ must still mention the specific listing that she considers and her failure to do so "if combined with a 'perfunctory analysis,' may require a remand." *Id.* (quoting *Ribaudo v. Barnhart,* 458 F.3d 580, 583–84 (7th Cir.2006)).

Listing 12.05 describes mental retardation and provides, in part:

> "Mental retardation refers to significantly subaverage general intellectual functions with deficits in adaptive functions initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function"

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

Plaintiff argues that his verbal IQ of 72 should have been considered as an equivalence by the ALJ, given Plaintiff's other impairments (namely, his alleged depression, post-traumatic stress disorder, and right leg impairment). The Program Operations Manual System ("POMS") provides, in part, that under 12.05C, slightly higher IQs "in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination." POMS DI 24515.056.

Here, the ALJ's step 3 analysis states that Plaintiff "does not have an impairment that meets or medically equals the criteria of any impairment in the Listing of Impairments," and then goes on to discuss Listing 12.04. Tr. at 26. The ALJ's decision does not mention Listing 12.05. However, Defendant argues that the ALJ considered whether Plaintiff's impairments equaled a listing and determined that they did not. In particular, Defendant contends that the testimony demonstrates that Dr. Marquis considered Listing 12.05 as he testified that he was familiar with that Listing. However, although Dr. Marquis did testify that he was familiar with Listing 12.05 and that Plaintiff did not meet a listing, his testimony then went on only to discuss Listing 12.04. Aside from mentioning that he was familiar with Listing 12.05, Dr. Marquis did not discuss that Listing. Given the scarce testimony and the ALJ's failure to reference Listing 12.05 in her decision, "the ALJ has left this court with grave reservations as to whether [her] factual assessment addressed adequately the criteria of the listing." *Scott,* 297 F.3d at 595.

Nonetheless, Defendant further argues that because the record contains "Disability Determination and Transmittal" forms, these forms demonstrate that the issue of equivalency was properly considered by the state agency consultants that filled them out. The Seventh Circuit has articulated that these forms conclusively establish that "consideration by a physician ... designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir.2004). Consequently, "[t]he ALJ may properly rely upon the opinion of these medical experts." *Id.*

Here, the state agency consultants who filled out the Disability Determination and Transmittal forms both found that Plaintiff was not disabled. The ALJ concluded that Plaintiff did not meet a listing based on "a comparison of the requirements of the Listing of Impairments by the *State Agency consultants*, the consultative examiners, as well as by the impartial medical experts...." Tr. at 26 (emphasis added). Accordingly, even though the ALJ failed to specifically refer to Listing 12.05, this omission was harmless as the Disability Determination and Transmittal forms conclusively demonstrate that the question of medical equivalency was considered at the initial and reconsideration levels. *Scheck*, 357 F.3d at 700.

### B. Plaintiff's Residual Functional Capacity

"Residual functional capacity" (RFC) is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n. 2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96–8p. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.*

#### 1. The ALJ's Resolution of the Discrepancies in Dr. Smejkal's Report

Plaintiff argues that the ALJ improperly analyzed and/or mischaracterized the discrepancies in Dr. Smejkal's report. In particular, Plaintiff argues that the ALJ improperly found that Dr. Smejkal meant that Plaintiff had no limitations in standing or walking where Dr. Smejkal checked a box providing that there were no limita-

tions in standing and/or walking, and then checked a box providing that Plaintiff was limited to at least two hours of standing and/or walking in an eight hour workday. Defendant argues that the ALJ's resolution of the discrepancy was proper based on the record and Plaintiff's testimony.

While the ALJ need not mention every piece of evidence in the record, the RFC determination must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Zblewski v. Astrue*, 302 Fed.Appx. 488, 492–93 (7th Cir.2008). The RFC assessment must include a narrative discussion which describes how the objective and subjective evidence supports each of the ALJ's conclusions. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p.

Here, the ALJ concluded that the objective evidence failed to support any limitations (except for minimal loss of range of motion of the right knee) and that Dr. Smejkal must have meant that Plaintiff had no limitations in standing and/or walking. Further, the ALJ noted Plaintiff's testimony that, despite his alleged need for crutches or a cane to assist with his walking, he walked twenty blocks without assistance to get to the bus that he took to get to the hearing and did not appear to be in any particular distress on the morning of the hearing. As Plaintiff points out, however, the other portions of Dr. Smejkal's opinion support that Plaintiff has limitations in walking and/or standing, as Dr. Smejkal noted limitations in Plaintiff's lower extremities, postural limitations, and that Plaintiff was able to walk heel to toe and tandemly with difficulty, and stoop and squat with difficulty.

While Plaintiff's testimony regarding his ability to walk, unassisted, twenty

blocks contradicts the limitations assessed in Dr. Smejkal's opinion, the ALJ did not specifically address, or resolve, this conflict. However, although the ALJ's "bridge building" here was cursory, an ALJ must only "minimally articulate his reasoning," which the ALJ did here. *Zblewski*, 302 Fed.Appx. at 492. Further, as Defendant correctly argues, any error by the ALJ in resolving the inconsistencies in Dr. Smejkal's opinion would be harmless error because the walking and/or standing limitations assessed by Dr. Smejkal were included by the ALJ in her hypothetical to the VE, and the jobs identified took the limitations into consideration. Accordingly, remand is not required on this issue. *See Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir.2003) (providing that harmless errors in administrative proceeds do not require remand upon judicial review).

### 2. Weight Given to Medical Source Opinions

Plaintiff argues that the ALJ improperly gave "controlling weight" to Dr. Smejkal's opinion since Dr. Smejkal is not a treating physician and did not evaluate Dr. Smejkal's opinion under the correct legal standard.

Under the "treating physician rule" in 20 C.F.R. 404.1527(d)(2), the ALJ is directed to give controlling weight to the medical opinion of a treating physician[2] if it is "well-supported by medically acceptable clinical and laboratory diagnostic tech-

niques" and "not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir.2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir.2006)). The regulation further provides that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d). These factors include the examining and treatment relationship between the medical source and the claimant, the frequency of the relationship, the support provided for the opinion, its consistency with the record as a whole, and whether the source is a specialist. *Id.* at (d)(1)-(6).

Here, the ALJ gave Dr. Smejkal's opinion "controlling weight," despite the fact that he was a consultative examiner[3] and a non-treating source.[4] Accordingly, since the regulation only addresses giving controlling weight to a treating source, the ALJ erred in giving controlling weight to Dr. Smejkal's opinion.

Further, Plaintiff argues that the ALJ was required to evaluate Dr. Smejkal's opinion with the factors in 20 C.F.R. 404.1527(d)(2)(i) and (d)(2)(ii). However, 20 C.F.R. 404.1527(d)(2) only requires the physician's opinion to be evaluated with the factors in (i) and (ii) where the physician is the *treating* source and is not given controlling weight. *See* 20 C.F.R. 404.1527(d)(2) (stating that "[w]hen we do

---

**2.** "A treating source is an individual's own physician, psychologist or other acceptable medical source that has provided that individual 'with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship' with that individual." *Bradley v. Commissioner of Social Security*, 3:07–CV–599 CAN, 2008 WL 5069124, at *4 (N.D.Ind. Nov. 25, 2008) (quoting 20 C.F.R. § 416.902).

**3.** Dr. Smejkal only examined Plaintiff at the state agency's request after the December 27, 2005 Hearing, rather than because of an ongoing medical relationship.

**4.** "A non-treating source is a physician[,] psychologist or other acceptable medical source who has examined an individual 'but does not have, or did not have, an ongoing relationship' with an individual." *Id.*, 2008 WL 5069124, at *4 (quoting 20 C.F.R. § 416.902).

not give the *treating* source's opinion controlling weight, we apply the factors in paragraphs (d)(2)(i) and (d)(2)(ii) of this section ... in determining the weight to give the opinion. We will always give good reasons ... for the weight we give to your *treating* source's opinion.") (emphasis added). Since Dr. Smejkal is not a treating source, the ALJ was not required to evaluate his opinion with the factors in (d)(2)(i) and (d)(2)(ii). Accordingly, the ALJ did not err in failing to evaluate Dr. Smejkal's opinion with the factors in (d)(2)(i) and (d)(2)(ii).

▉ Nonetheless, the ALJ was still required to consider the factors set out in (d)(1)-(6). Defendant argues that while Plaintiff is correct that "controlling weight" may only be given to the opinions of treating sources, the ALJ committed harmless error here as her intentions were "quite clear" that she intended to give Dr. Smejkal's testimony "greatest weight." Def.'s Resp. Br. 17. In support, Defendant argues that this is made clear by the fact that the ALJ did not accept all of Dr. Smejkal's opinion. Defendant's reliance on the ALJ's failure to accept all of Dr. Smejkal's opinion is not sufficient to comply with 404.1527(d)'s factors. Even if the Court were to accept Defendant's argument that the ALJ mislabelled the weight given to Dr. Smejkal's opinion and meant to give his opinion "greatest weight," the ALJ erred in failing to fully consider and articulate [5] the weight she gave to Dr. Smejkal's testimony. *See Lucio v. Barnhart*, No. 03 C 7078, 2004 WL 1433637, at *13 (N.D.Ill. June 22, 2004). The ALJ's opinion is devoid of any discussion of the factors in 404.1527(d)(1)-(6) or about giving Dr. Smejkal's opinion "greatest weight." In fact, the only mention of "greatest

weight" in the ALJ's opinion was in regard to Dr. Marquis' testimony. Accordingly, the ALJ also erred in failing to explain the weight she gave to Dr. Smejkal's opinion. *See id.* (finding error where the ALJ failed to explain the weight given to the treating physician's, consultative examiner's, and state agency physician's opinions).

### 3. ALJ's Rejection of Dr. Rudolph's Psychological Assessment

Plaintiff argues that the ALJ improperly rejected Dr. Rudolph's psychological assessment by giving it "little weight" when finding that Dr. Rudolph based his opinion of marked impairments solely on Plaintiff's hearing loss and not his mental impairments. Particularly, Plaintiff argues that Dr. Rudolph's written narrative supports that his assessment was also based on Plaintiff's mental impairments. Accordingly, Plaintiff argues that the ALJ had a duty to recontact Dr. Rudolph to determine what he relied on in forming his opinion.

▉ An ALJ can reject an examining physician's opinion if the ALJ's reasons are supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir.2003). A contradictory opinion of a non-examining physician is not, by itself, sufficient. *Id.* The ALJ here gave "little weight" to Dr. Rudolph's assessment because Dr. Rudolph found marked impairments in Plaintiff's ability to understand instructions and interact with others on the basis of Plaintiff's hearing loss, not mental impairments. The ALJ then gave greatest weight to Dr. Marquis' testimony, stating that he reviewed the entire record and helped reconcile any discrepancies in it. However, in Dr. Marquis'

---

5. Further, even in giving Dr. Smejkal's opinion controlling weight, other than stating that she relied on Dr. Smejkal's opinion as it was

the most limiting assessment in the record, the ALJ failed to articulate any reasoning behind the weight she gave to his opinion.

testimony, he expressed uncertainty as to how Dr. Rudolph arrived at his assessment of marked impairments. Although Dr. Marquis stated that he believed that Dr. Rudolph's assessment was not supported by the actual records, he also was speculating as to the reason why Dr. Rudolph believed that Plaintiff had marked impairments.

Further, Dr. Marquis testified that he did not know the basis for Dr. Rudolph's determination of depression and that the only reason why he did not "think too much" of Dr. Rudolph's assessment, despite relying on his report, was because Dr. Marquis did not know how Dr. Rudolph "came up with marked impairments," but the "narrative sounds good, sounds reasonable." Tr. at 478. As Plaintiff correctly points out, neither Dr. Marquis nor the ALJ pointed to any reports or evaluations to contradict Dr. Rudolph's opinion. Rather, the ALJ relied on Dr. Marquis' testimony, which repeatedly demonstrated only uncertainty as to Dr. Rudolph's assessment of Plaintiff's marked impairments, rather than contradicting such testimony. Accordingly, Plaintiff argues that the ALJ should have recontacted Dr. Rudolph to determine what he relied on in forming his opinion.

Defendant argues that the weight that the ALJ gave to Dr. Rudolph's opinion was correct since he only cited hearing loss as the basis for his assessment that Plaintiff had a marked impairment. Further, Defendant contends that the lack of significant clinical abnormalities during Plaintiff's examination leaves no need to recontact Dr. Rudolph.

 The ALJ has a duty to fully develop the record. *Luna v. Shalala,* 22 F.3d 687, 692–93 (7th Cir.1994). The regulations provide that an ALJ will seek additional evidence or clarification from a medical source when the report from that source contains conflict or ambiguities that must be resolved or when the report does not contain all the necessary information. *See* 20 C.F.R. § 404.1512(e)(1). The ALJ's duty to recontact a medical source is only triggered when the evidence received is inadequate to determine whether or not Plaintiff is disabled. *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004).

Here, the ALJ only discounted Dr. Rudolph's mental assessment of Plaintiff because she found that his finding that Plaintiff had marked deficits was based solely on Plaintiff's hearing loss. The ALJ then gave greatest weight to Dr. Marquis' testimony. As previously noted, Dr. Marquis repeatedly expressed that he did not know the basis for Dr. Rudolph's assessment that Plaintiff had marked impairments, and used this reason as the sole basis for not thinking "too much of [Dr. Rudolph's opinion]," despite that Dr. Rudolph's accompanying written narrative discussed Plaintiff's mental impairments, indicating that these impairments may have been taken into consideration in determining Plaintiff's limitations. Tr. at 478. Dr. Marquis then testified that Plaintiff had at most moderate limitations in maintaining social functioning and concentration, persistence, and pace. The ALJ then "translate[d]" Dr. Marquis' assessed limitations into functional terms by using them to determine Plaintiff's RFC. Tr. at 31.

 Therefore, an ambiguity exists as to whether Dr. Rudolph relied on physical or mental impairments when finding that Plaintiff had marked limitations and the evidence is, therefore, inadequate to determine whether or not Plaintiff had marked or moderate limitations, which is directly relevant to Plaintiff's RFC, and "it is the [RFC] that is central to the disability determination." *Keener v. Astrue,* No. 06–CV–0928–MJR, 2008 WL 687132, at *11 (S.D.Ill. March 10, 2008). Accordingly, the

ALJ erred by giving greatest weight to Dr. Marquis' testimony without recontacting Dr. Rudolph for clarification. *See Ohms v. Barnhart*, No. 04 C 5365, 2005 WL 5178687, at *10 (N.D.Ill. October 26, 2005) (finding that the ALJ erred in relying on the testimony of a medical expert without recontacting another examiner, where the medical expert's testimony demonstrated uncertainty in the basis for the examiner's opinion). Without clarification of this issue, the record is inadequate to determine if Plaintiff is disabled.

#### 4. Duty to Recontact Dr. Smejkal

Plaintiff argues that the ALJ was also required to recontact Dr. Smejkal regarding the inconsistencies in his RFC assessment. However, given that the Court has already determined that any error by the ALJ in resolving the conflict was harmless, there is no need to recontact.[6]

#### 5. Severity of Plaintiff's Asthma

Plaintiff argues that the ALJ erred in not finding Plaintiff's asthma to be a severe impairment, in failing to consider the impact of Plaintiff's asthma in combination with other severe impairments, and in ignoring the State Agency's opinion regarding the effect of Plaintiff's asthma on environmental limitations. Defendant argues that there was no error as Plaintiff's asthma was under control and the jobs identified by the VE accommodated Plaintiff's environmental limitations, if any existed.

 In determining a claimant's RFC, the ALJ must consider all mental and physical impairments, even if they are not severe. SSR 96–8p. A "severe" impairment is "any medically determinable impairment that would interfere with a person's ability to perform the full range of exertional and non-exertional work related activities." *Brown v. Massanari*, No. 00 C 6839, 2001 WL 1315075, at *1 (N.D.Ill. Oct. 26, 2001). Here, the ALJ recognized that Plaintiff's testimony, as well as the written record, supported that Plaintiff has asthma, but it was controlled with medication that Plaintiff took as needed. Plaintiff also testified that when he is in a clean environment, his asthma does not bother him and that he has not had to be hospitalized for asthma since prior to the summer of 2003. Dr. White's 2004 consultative exam found Plaintiff's respiratory system to be normal. Further, Dr. Smejkal's 2006 narrative assessment noted that there was no clinical evidence of asthma and no acute respiratory distress. Accordingly, based on the record, the ALJ did not err in finding that Plaintiff's asthma was not a severe impairment.

Plaintiff further argues that the ALJ erred in failing to consider Plaintiff's 1993 pulmonary function tests, which would have showed that Plaintiff's asthma would have imposed at least some restriction on Plaintiff's RFC. However, although the ALJ must address the evidence in the record that does not support her conclusion, she "need not provide a written evaluation of every piece of evidence and testi-

---

**6.** Additionally, Plaintiff argues that the validity of Dr. Smejkal's report is brought into question because he found that Plaintiff's hearing was not affected by his impairments and, in conjunction with the other inconsistencies, required the ALJ to recontact Dr. Smejkal. However, given that the ALJ already found that Plaintiff suffered from hearing impairments, there would be no need to recontact Dr. Smejkal regarding whether his

finding was a mistake. *See Shinabarger v. Barnhart*, No. 1:05–cv–0276–DFH–TAB, 2006 WL 3206338, at *13 (S.D.Ind. March 31, 2006) (finding that where the information requested for recontact would not assist the ALJ in evaluating Plaintiff's functional limitations, and the evidence was adequate to make a disability determination, there was no need to recontact).

mony." *Hernandez v. Astrue,* 277 Fed. Appx. 617, 623 (7th Cir.2008). The pulmonary function tests here were performed in 1993 and more recent evidence indicated that Plaintiff's asthma was under control. Accordingly, the ALJ did not err by failing to consider it.

Plaintiff further argues that even if his asthma was not a "severe" impairment, the ALJ was required to consider the impact of Plaintiff's asthma in combination with Plaintiff's severe impairments; in particular, its effect on the type of work environment that Plaintiff could work in. Plaintiff also points to the State Agency RFC Assessment to support that because of Plaintiff's asthma, he had to avoid environments such as extreme cold and heat, noise, and vibration. Plaintiff claims that the ALJ ignored this opinion and erred in doing so.

Defendant contends that the ALJ was not required to accept the opinion's environmental limitations as Plaintiff's asthma was under control and Dr. Smejkal's opinion found no environmental limitations.

In the ALJ's opinion, she failed to mention the environmental limitations that were included in the State Agency's RFC Assessment. The record here supports that the State Agency opinion was directly contradicted by Dr. Smejkal's opinion, which found no environmental limitations. The ALJ's duty is to resolve inconsistencies in the evidence. *See* SSR 96–8p. The ALJ here failed to address this conflict in the evidence and failed to resolve it in her opinion. During the December 27, 2005 Hearing, the ALJ asked Plaintiff if his asthma bothered him when he was in a clean environment and at the Supplemental Hearing, during the questioning of the VE, the Plaintiff once again testified to his environmental limitations. Accordingly, the record indicates that the ALJ was aware of the environmental limitations, yet, she failed to address them or the conflicting opinions. Therefore, the ALJ failed to establish a logical bridge between her evidence and the RFC and remand is required. *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir.2000).

Defendant argues that even if Plaintiff had some environmental limitations, they did not prevent him from performing the jobs identified by the VE as the jobs do not require Plaintiff to work in the environments that would aggravate his asthma. However, as already noted, the ALJ's opinion is devoid of any discussion regarding Plaintiff's environmental limitations and fails to support that they were considered and/or discredited. The environmental limitations were not included in the RFC or in the hypothetical to the VE. While the VE was present during the Supplemental Hearing where Plaintiff testified briefly to his environmental limitations with steam, there is no indication from the record that the VE took those environmental limitations into consideration when identifying the jobs that a person with Plaintiff's RFC could perform. The record supports this conclusion especially since the VE heard this testimony *after* identifying the jobs that Plaintiff could perform and did not address the limitations in his subsequent testimony. Accordingly, on remand, the ALJ should also consider the impact of Plaintiff's asthma on his RFC.

### 6. Plaintiff's Postural Limitations

Plaintiff also argues that the ALJ erred in giving Dr. Smejkal's opinion controlling weight and then failing to include all of his assessed limitations in her RFC. In particular, Plaintiff argues that the ALJ was required to include the assessed postural limitations in her RFC. Defendant argues that the jobs identified by the VE do not include postural limitations on more than an occasional basis, and there is no error.

As previously noted, the ALJ is not required to provide an in-depth analysis of every piece of evidence that the claimant provides. *Diaz*, 55 F.3d at 307. The question is whether the ALJ builds an adequate and logical bridge between the evidence and the result. *Shramek*, 226 F.3d at 811. The ALJ's failure to consider an entire line of evidence, however, falls below the minimal level of articulation that is required. *Diaz*, 55 F.3d at 307.

■■■ While the ALJ's opinion does refer to the fact that Dr. Smejkal's opinion found postural limitations, it fails to specifically discuss these limitations. In Dr. Smejkal's report, he found that Plaintiff could occasionally engage in postural movements such as climbing, balancing, kneeling, crouching, crawling, and stooping. Nonetheless, although the ALJ did not specifically cite climbing, balancing, kneeling, crouching, crawling, or stooping in her opinion, she did limit Plaintiff to the use of foot and leg controls for no more than one-third of the day, because of his right leg and knee pain. Further, the limitation to one-third of the day is consistent with Dr. Smejkal's assessed "occasional" postural limitations, as his report indicates that "occasionally means occurring from very little up to *one-third* of an 8–hour workday (cumulative, not continuous)." Tr. at 399 (emphasis added). Therefore, the ALJ built an adequate and logical bridge between the evidence and her RFC assessment and did not ignore the evidence pertaining to Plaintiff's postural limitations. *See Brandenburg v. Barnhart*, No. 104CV01376DFHWTL, 2005 WL 2148119, at *5–6 (S.D.Ind. Aug. 2, 2005) (finding that where Plaintiff was limited in bending, stooping, kneeling, or crawling, and the ALJ failed to specifically mention those limitations in his opinion, but addressed the Plaintiff's need to keep his right leg straight, this was sufficient to build a logical bridge between the evidence and the ALJ's conclusion, and account for those limitations in the RFC).

## C. VE questioning, SSR 00–4p, and the DOT

Plaintiff contends that the ALJ erred by failing to ask the VE whether his testimony was consistent with the DOT and that the jobs identified by the VE required a reasoning level of 2, which exceeded Plaintiff's limitation to perform simple work. The Defendant concedes that the ALJ failed to specifically ask the VE whether his testimony conflicted with the DOT, but that this amounts to harmless error. Further, the Defendant argues that it is inappropriate to compare RFC mental limitations to GED levels of reasoning.

■■■ SSR 00–4p requires:

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00–4p, 2000 WL 1898704 at *4. The regulations allow the ALJ to rely on either the VE or the DOT when making a determination regarding available work for the claimant. *See* 20 C.F.R. § 404.1566(d), (e) (2007). SSR 00–4p requires an ALJ to ask a vocational expert about any possible conflicts between the VE's testimony and the DOT, and obtain a reasonable explanation for any apparent conflict. *Stark v. Astrue*, 278 Fed.Appx. 661, 667 (7th Cir.2008) (cit-

ing *Prochaska v. Barnhart,* 454 F.3d 731, 735 (7th Cir.2006)). SSR 00–4p places the burden of making the DOT inquiry on the ALJ, not the claimant. *Prochaska,* 454 F.3d at 735. Once the ALJ inquires into whether a conflict exists, absent any apparent conflict, the ALJ may then reasonably rely on the VE's testimony. *See Stark,* 278 Fed.Appx. at 667 (stating that where the VE's testimony did not present any apparent conflict with the DOT, the ALJ had no reason to doubt that the testimony was consistent with the DOT). The primary focus is on whether a conflict is apparent at the time of the hearing, and not afterwards. *See id.* (indicating that the absence of an apparent conflict at the time of the hearing supports that the ALJ satisfied her duty when examining the vocational expert).

Here, the ALJ assessed that Plaintiff had the RFC to perform "unskilled simple repetitive tasks." Tr. at 26. Plaintiff argues that the jobs identified by the VE, which the ALJ later determined existed in significant numbers for Plaintiff to perform (compact assembler, bottle packager, and small parts assembler) have DOT descriptions requiring reasoning levels of 2. Appendix C of the DOT defines a reasoning level of 2 as requiring the ability to "apply commonsense understanding to carry out detailed … instructions." DOT, App'x C. As discussed below, this conflicts with the requirement for "simple" work.

 Defendant argues that although the ALJ failed to inquire into whether the VE's testimony conflicted with the DOT, this was harmless error since the VE testified that some of his testimony conflicted with the DOT, but provided an explanation for his testimony. As the Plaintiff correctly points out, however, the VE testified

only as to an inconsistency between his testimony and the DOT regarding finding sedentary jobs which were only listed in the DOT as light jobs, based on his personal knowledge and discussions with other vocational experts. The VE did not otherwise indicate that his testimony was consistent with the DOT and the ALJ failed to inquire into this. Given that the VE identified a potential inconsistency between his testimony and the DOT, the ALJ should have inquired into whether there were any further conflicts between the testimony and the DOT, instead of merely assuming that no other conflict existed. The Seventh Circuit has found that the ALJ's failure to question a VE regarding a conflict was harmless where no inconsistency existed between the testimony and the DOT[7] and when the jobs identified were consistent with the Plaintiff's RFC.[8] None of these situations apply here and the Defendant has failed to show that the ALJ's error was harmless.

Defendant argues that a reasoning level 2 is not inconsistent with the RFC to do simple and routine work, relying on dicta from a Tenth Circuit decision. *See* Def.'s Resp. Br. 20 (citing *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) (stating that level 2 reasoning appears to be consistent with the RFC of simple and routine work tasks)). However, courts in other federal circuits have specifically held to the contrary. *See Mead v. Barnhart,* No. Civ. 04–139–JD, 2004 WL 2580744, at *2 (D.N.H. Nov. 15, 2004) (finding that the GED reasoning level of 2 or higher assumes that a plaintiff is able to perform more than simple or repetitive tasks); *Allen v. Barnhart,* No. C–02–3315 EDL, 2003 WL 22159050, at *10 (N.D.Cal. Aug. 28, 2003) (noting that a reasoning level of 2 exceeds the limitation to "simple, routine

---

7. *See Ketelboeter v. Astrue,* 550 F.3d 620, 626 (7th Cir.2008).

8. *See Zblewski v. Astrue,* 302 Fed.Appx. at 494–95.

tasks"). Further, another court in this Circuit has held that a job requiring carrying out of detailed (level 2) instructions is inconsistent with work requiring simple duties. *Walton v. Chater*, No. 94 C 1484, 1995 WL 579535, at *4 (N.D. Ill. Sept. 25, 1995). Accordingly, the identified jobs that require a GED reasoning level of 2 exceed Plaintiff's limitation to "simple" tasks, by requiring Plaintiff to carry out "detailed" instructions. *See id.*

Moreover, Defendant argues that it is inappropriate to compare RFC mental limitations to GED levels of reasoning under the DOT because GED relates to the vocational factor of education, rather than the mental demands of a job (which must be compared to the RFC). Contrary to Defendant's argument, however, several courts have found that the GED's reasoning level does pertain to the work requirements of a job and is relevant where an ALJ limits a Plaintiff to performance of a simple task. *See Estrada v. Barnhart*, 417 F.Supp.2d 1299, 1302 n. 3 (M.D.Fla.2006) (finding that the GED reasoning level pertains to the complexity of a job and is relevant when an ALJ limits a Plaintiff to performing a job that involves only simple tasks); *Mead*, 2004 WL 2580744, at *2 (finding that the GED requirements are pertinent to the complexity of a job); *Cooper v. Barnhart*, No. 03–CV–665–J, 2004 WL 2381515, at *4 (N.D.Okla. Oct. 15, 2004) (finding that the GED's reasoning level is relevant to a limitation to performing only simple tasks). Further, these courts have ordered remand because of an ALJ's failure to obtain an explanation from the VE regarding a conflict between the VE's testimony that a plaintiff could perform a job that the DOT classified as a reasoning level 2 when the ALJ limited the plaintiff to performing simple and repetitive tasks. *See Mead*, 2004 WL 2580744, at *2; *Allen*, 2003 WL 22159050, at *10; *Walton*, 1995 WL 579535, at *4. In fact, the exact argument

that Defendant is trying to advance before this Court has been rejected by another court. *See Leonard v. Astrue*, 487 F.Supp.2d 1333, 1343 (M.D.Fla.2007) (rejecting the argument that the GED level relates to the educational level needed to perform the job and not the job's work requirements).

Defendant has failed to address this line of cases and has failed to cite any case law in support of his argument that the GED's reasoning level merely relates to the educational level needed to perform the job and has no relation to the job's mental demands. Accordingly, the case must be remanded.

**D. The ALJ's Hypothetical**

 Plaintiff further argues that the hypothetical posed to the VE was incomplete as the ALJ failed to refer to the postural limitations assessed in Dr. Smejkal's report. Although the ALJ adequately addressed the postural limitations in her RFC, she failed to incorporate them in her hypothetical to the VE. The hypothetical that the ALJ poses to a VE must ordinarily include all limitations supported by the medical evidence in the record. *Patty v. Barnhart*, 189 Fed.Appx. 517, 521 (7th Cir.2006). The hypothetical, though, need not include all of Plaintiff's alleged impairments. *Id.* An ALJ may rely on VE testimony, even if it is in response to an incomplete hypothetical, "when the record supports the conclusion that the VE considered the medical reports and documents." *Id.* (quoting *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540–41 (7th Cir.1992)).

██ Here, the ALJ's hypothetical to the VE not only failed to specifically refer to Plaintiff's postural limitations, but unlike the RFC, also failed to incorporate the limitations on the use of leg controls. Additionally, the evidence does not support

that the VE here reviewed the record and took into consideration all of the limitations found by Dr. Smejkal's report. Accordingly, the Court cannot impute to the VE knowledge of the limitations imposed by Plaintiff's physical impairments.

The Defendant argues that, in any event, the jobs identified by the VE do not include the postural limitations on more than an occasional basis. However, one of the jobs identified—bottle packer (DOT # 920.685–026)—does require the use of a pedal, which may affect Plaintiff's use of foot controls. Without any evidence in the record indicating that the VE took the postural limitations into consideration, the Court cannot find the incomplete hypothetical as harmless and must remand.

## CONCLUSION

The Court finds that the ALJ failed to properly weigh the medical source opinions, improperly rejected Dr. Rudolph's psychological assessment of Plaintiff and failed to recontact him, failed to consider the impact of Plaintiff's asthma on environmental limitations for his RFC, failed to consider all of Plaintiff's limitations in her RFC finding, failed to properly question the VE as to the consistency of his testimony with the DOT, and failed to submit a complete hypothetical to the VE. Therefore, to this extent the Court **GRANTS** the Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.