NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2008
Decided December 15, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1755

|  |  |
|---|---|
| ALAN R. ZBLEWSKI, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *Plaintiff-Appellant,* | |
| *v.* | No. 07-cv-429-bbc |
| MICHAEL J. ASTRUE, Commissioner of Social Security | John C. Shabaz, *District Judge*. |
| *Defendant-Appellee.* | |

**O R D E R**

Alan Zblewski applied for disability insurance benefits and supplemental security income claiming that he was unable to work because of medical conditions related to hepatitis C. His application was denied initially and upon reconsideration; an administrative law judge ("ALJ") denied benefits and the Appeals Council denied review. The district court upheld the Commissioner's decision. We affirm.

## Background

Alan Zblewski worked primarily as a roofer, concrete finisher, and landscaper before applying for benefits. His medical history includes a sprained left shoulder and an injured right knee in 2003.

In April 2004 he was diagnosed with chronic hepatitis. In June 2004 he was hospitalized with abdominal pain, but the cause was never determined. A CT-scan noted multiple lymph nodes that were consistent with hepatitis. A biopsy in October 2004 showed liver cirrhosis. In October he began interferon therapy for his hepatitis, but because he did not tolerate the therapy well, he stopped the therapy the following month and never restarted it. Nevertheless, his hepatitis appears to be in remission.

In October 2004 Zblewski complained of sharp chest pain, tightness, and shortness of breath. Dr. Alan Singer performed a cardiac stress test that was negative for angina and ischemic electrocardiogram changes, and based on these test results concluded that Zblewski did not have a heart attack.

In July 2005 Dr. Julie Kulie, Zblewski's treating physician, reported that a magnetic resonance imaging scan showed some mild stenosis in the cervical spine but no lumbar spinal pathology. In August 2005 rheumatologist Dr. Daniel Malone evaluated Zblewski's complaints of arthralgia (joint pain) in his fingers and knees, concluding that he did not have rheumatoid arthritis.

In November 2004 nurse practitioner Patrice Kennedy, who had cared for Zblewski since June, completed a residual functional capacity ("RFC") form for Zblewski noting that he could sit for twenty minutes at a time and for four hours in a workday, and could stand for twenty minutes and two hours in a workday. She stated that he could not work full-time, could lift less than ten pounds, and could not stoop or squat. She attributed his limitations to pain, arthralgia, fatigue, nausea, and the side effects of interferon therapy.

Another RFC form was completed in November 2004 by Dr. Kulie. Like Kennedy, she also noted that Zblewski could not lift ten pounds, could stand less than two hours, and had to change position every ten minutes. She also noted severe back pain, abdominal pain, testicular swelling and pain, as well as overall weakness and malaise secondary to hepatitis C treatment.

In September 2004 Dr. M.J. Baumblatt and in January 2005 Dr. Robert Callear, nonexamining state-agency physicians, reviewed Zblewski's medical records and concluded that he could perform a full range of sedentary work.

At a hearing before an administrative law judge in December 2006, Zblewski testified about his medical condition. He testified that his rheumatoid arthritis caused constant pain in his back and both knees. This pain prevents him from standing for long or picking up his grandson, affects his balance, and requires him to use a cane. He testified he can wash dishes for only about fifteen minutes before the pain prevents him from continuing. Zblewski also testified about pain brought on by stress related to a previous heart attack, memory problems, high blood pressure, headaches, sleep problems, asthma, depression, and abdominal pain related to his hepatitis.

A vocational expert ("VE") also testified at the hearing. He compared Zblewski's prior work experience to the descriptions in the *Dictionary of Occupational Titles*, concluding that a person of Zblewski's age, education, and experience would have no transferable skills to light or sedentary work. The VE was also asked how many jobs would be available to such a person limited to light or sedentary work that would allow for change of positions, sitting and standing at will, in addition to regular work breaks, with no more than occasional bending and twisting, and no more than occasional kneeling or squatting. The VE estimated that 4000 sedentary security guard and light-duty parking lot attendant positions existed in the regional economy. He also noted that based on his own experience, a person with these limitations would also be able to perform an additional 2000 assembly jobs in the regional economy.

The ALJ performed the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520, 416.920, concluding that Zblewski was not disabled because jobs remained available for him to perform. The ALJ found that Zblewski had not engaged in gainful work activity since April 1, 2004 (step one); that Zblewski had three severe impairments: chronic back pain, chronic knee pain, and hepatitis C (step two); that the severe impairments did not meet the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (step three); that Zblewski had the residual functional capacity to perform light and sedentary work with occasional bending, twisting, kneeling, or squatting, given the opportunity to sit or stand, and therefore could not perform his past work (step four); and that Zblewski was not disabled because a person of his age, education, work experience, and residual functional capacity could perform a significant number of jobs (step five).

**Analysis**

*The Residual Functional Capacity Determination*

First, Zblewski argues the ALJ's RFC determination is unsupported by substantial evidence because once the ALJ disregarded the opinions of Dr. Kulie and Kennedy, there

was no other medical evidence in the record. He argues that the ALJ simply "played doctor" at step four, determining his RFC without the benefit of objective medical evidence.

The ALJ need not mention every piece of evidence, but an RFC determination must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Additionally, the RFC assessment must include a narrative discussion describing how the evidence, both objective and subjective, supports each conclusion. *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006); S.S.R. 96-8p. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." S.S.R. 96-8p.

The record contains objective medical evidence supporting the ALJ's RFC determination concerning Zblewski's ability to sit or stand. Both Dr. Baumblatt and Dr. Callear found that Zblewski could perform sedentary work based on a consideration of Zblewski's hepatitis diagnosis and his medical records. The record also reflects that when Zblewski tore his miniscus, he required only light-work restrictions, supporting the conclusion that his knee pain was not completely disabling. Additionally, MRI tests showed no significant lumbar abnormality and did not support a rheumatoid arthritis diagnosis. While the ALJ's "bridge building" was cursory (and somewhat incomplete—he made no reference to the evaluations of Dr. Baumblatt and Dr. Callear), his analysis is nevertheless more defensible than the sort of conclusory discussion we have rejected in the past. *See, e.g.*, *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Under the "substantial evidence" standard, the ALJ must only "minimally articulate" his reasoning. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Because the ALJ minimally articulated his reasoning for his findings and the record supports his conclusion, we affirm the RFC determination.

*The Rejections of Dr. Kulie's and Kennedy's Opinions*

Zblewski next argues that the ALJ erred when he rejected the opinions of Dr. Kulie and Kennedy—opinions that, he maintains, were consistent with the medical evidence. Zblewski argues that the ALJ violated 20 C.F.R. § 404.1527(d) by not giving enough weight to Dr. Kulie's opinion given her long-term, primary-care relationship with Zblewski. He further disputes the ALJ's conclusion that Dr. Kulie's opinion was contradicted by objective medical evidence; in his view the record substantiates her reports that he suffered fatigue, nausea, and abdominal pain.

The opinion of a treating physician is entitled to controlling weight if well supported by objective findings and not inconsistent with other substantial evidence in the record.

*Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If an ALJ is not going to give a treating physician's opinion controlling weight, he must give "good reasons" for explaining how much weight he has given the opinion. 20 C.F.R. § 404.1527(d)(2). "[M]edical opinions upon which an ALJ should rely need to be based upon objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004); *see also White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005).

The ALJ was correct to discount Dr. Kulie's opinion—first, because it was not well supported by objective medical evidence. *See* 20 C.F.R. § 404.1527(d)(3). Dr. Kulie concluded that Zblewski could lift only less than ten pounds and could work only part-time, but no objective medical evidence supports her conclusion. She apparently based her conclusion solely on Zblewski's subjective complaints of pain. Second, Dr. Kulie's opinion was inconsistent with other substantial evidence in the record. For instance, the record contains the results of a battery of tests Dr. Kulie ordered suggesting that Zblewski's condition, while serious, would not create debilitating back pain; these tests revealed a normal MRI, no lumbar abnormalities, and no rheumatoid arthritis. Because the ALJ pointed to medical evidence that was inconsistent or insufficiently objective, the ALJ provided the "good reasons" required for discounting Dr. Kulie's testimony. *See* 20 C.F.R. § 404.1527(d)(2).

Zblewski also challenges the rejection of Kennedy's opinion. Although he concedes that she is only a nurse practitioner and therefore not an acceptable medical source, *see* 20 C.F.R. § 404.1513(a), he contends that the ALJ erred by completely disregarding her opinion. He argues that the ALJ should have considered her opinion under 20 C.F.R. § 404.1513(d)(1) as an other "medical source."

The ALJ did not reject Kennedy's opinion simply because she was not an acceptable medical source. Instead, he considered her opinion, accorded it less weight, and then rejected it because it was against the weight of the medical evidence. For instance, Kennedy stated that Zblewski was unable to perform fine manipulation with his fingers, but Zblewski himself did not make such a claim. This degree of exaggeration led the ALJ to believe that she was "attempting to bend over backward to help the claimant get benefits." Additionally, Kennedy claimed that Zblewski's pain prevented him from lifting ten pounds or working ten hours a week. But this claim was not borne out by objective test results, which showed no lumbar abnormalities or adverse effects of Zblewski's hepatitis (then in remission) requiring these restrictions. The ALJ was thus entitled to reject Kennedy's assessment as inconsistent with the medical evidence in the record.

*Zblewski's Credibility*

Zblewski also argues that the ALJ erred by finding Zblewski less credible because his testimony was inconsistent with objective medical evidence. For example, he argues that the ALJ improperly disregarded the undisputed record evidence of his severe fatigue and nausea. In Zblewski's view the ALJ improperly discounted his entire testimony based on his erroneous impression that he had rheumatoid arthritis and had suffered a heart attack.

We review credibility determinations deferentially, overturning them only if patently wrong. *Craft*, 539 F.3d at 678. According to S.S.R. 96-7p, an ALJ must consider the consistency of a claimant's statements with objective information in the case record. *Id.*

The ALJ did not err in discrediting Zblewski's testimony given the significant disparity between the testimony and the objective medical record. Zblewski testified that he had rheumatoid arthritis and that he suffered a heart attack. But rheumatoid factor tests ruled out rheumatoid arthritis, and EKG and cardiac stress tests ruled out a heart attack. Thus, we do not find that the ALJ's credibility determination was patently wrong.

*The Vocational Expert's Testimony*

Zblewski next argues that the ALJ violated S.S.R. 00-4p because he failed to clarify an "inconsistency" between the VE's testimony and the *Dictionary of Occupational Titles ("DOT")*. Zblewski notes that the *DOT* does not define sit/stand options, and yet the VE offered his opinion on jobs available in the economy based on such a limitation. According to Zblewski, the ALJ was required to ask the VE to explain the inconsistency.

Social Security Ruling 00-4p requires the ALJ to identify and explain any conflict between the *DOT* and VE testimony. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). However, we have recently held that the duty to inquire arises only when the conflict between the *DOT* and VE testimony is apparent. *See Overman v. Astrue*, 546 F.3d 456, 463-64 (7th Cir. 2008). Because the *DOT* does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the *DOT*.

Moreover, even if the ALJ failed to comply with S.S.R. 00-4p, that failure was harmless because the ALJ was entitled to rely on other, unchallenged VE testimony. The VE testified that based on his experience, 2000 assembly jobs allowed a sit/stand at-will option. Zblewski did not challenge that assertion at his hearing, and an ALJ is entitled to rely on unchallenged VE testimony. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002). Therefore, even if it was error for the ALJ to not directly ask whether the expert's testimony was consistent with the *DOT*, these 2000 assembly jobs the VE identified would remain available, rendering the error harmless. *See Prochaska*, 454 F.3d at 736 (applying harmless-error analysis to violation

of S.S.R. 00-4p); *see also Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008) (failure to follow S.S.R. 00-4p harmless when other positions remained available).

*Sentence Six Remand*

Zblewski finally argues that a remand is warranted under sentence six of 42 U.S.C. § 405(g) because Dr. Kulie submitted a letter to the Appeals Council in March 2007 documenting laboratory tests she performed. A remand is warranted only if there is additional evidence that is new, material, and not previously submitted for good cause. *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003).

No remand is required because Dr. Kulie's letter does not present new information. Her letter merely suggests the results of a physical exam in May 2006 documenting trapezius muscle tenderness and dental issues in December 2006 that "could have" supported her initial RFC evaluation. She also notes that other colleagues documented Zblewski's joint pain, but does not specify what information they might provide. To justify a remand, "new" means "'not in existence or available to the claimant at the time of the administrative hearing.'" *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). Although Dr. Kulie did not write the letter until after the hearing, the documentation from the physical and dental exams in May and December 2006 existed at the time of the hearing. Accordingly, no remand is required.

## Conclusion

The RFC finding was supported by substantial evidence; the ALJ properly discounted the evaluations of Dr. Kulie and Kennedy; the credibility finding concerning Zblewski was not patently wrong; the testimony of the vocational expert was properly accepted; and a remand under sentence six is not required. Therefore, the judgment of the district court is AFFIRMED.