**Jason SZUMYLO, Plaintiff,**

**v.**

**Michael J. ASTRUE, Commissioner, Social Security Administration, Defendant.**

Civil Action No. 2010–10688–RBC.[1]

United States District Court,
D. Massachusetts.

Sept. 30, 2011.

Kathryn J. Wickenheiser, Sara J. Frankel, P.C., Fall River, MA, for Plaintiff.

Thomas D. Ramsey, Office of the General Counsel, Social Security Administration, Sonya A. Rao, United States Attorney's Office, Boston, MA, for Defendant.

---

**1.** On March 8, 2011, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER (# 13) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER, ETC. (# 16)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On April 23, 2010, plaintiff Jason Szumylo ("Szumylo") filed a complaint (# 1) pursuant to 42 U.S.C. § 405(g) against defendant Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), appealing the denial of his claim for Social Security Disability Income ("SSDI") benefits. On August 31, 2010, the Commissioner filed an answer to the complaint (# 9) and on October 4, 2010, the administrative record. (# 12) The parties have filed cross-motions to resolve the plaintiff's claim, respectively seeking an order to reverse the Commissioner's decision (# 13) and an order to affirm the Commissioner's decision. (# 16) The motions have been fully briefed (## 14, 17) and stand ready for decision.

### II. Procedural Background

On March 17, 2008, Szumylo filed for Social Security disability insurance benefits alleging a disability onset date of March 23, 2007. (TR [2] at 7) His application was denied both initially on June 12, 2008 (TR at 7) and on reconsideration in October of 2008 (TR at 7). Szumylo requested a hearing before an administrative law judge ("ALJ"). (TR at 7) That hearing was held on September 22, 2009, with the plaintiff, his attorney and a vocational expert in attendance. (TR at 20–84) A medical expert participated in the hearing via telephone. (TR at 22)

On October 3, 2009, the ALJ issued a decision wherein she found as follows: Szumylo met the insured status requirements through December 31, 2011; Szumylo has not engaged in substantial employment since March 23, 2007; Szumylo has the following severe impairments—status post-left knee meniscus tear, early osteoarthritis in the right knee, obesity, degenerative disc disease of the thoracolumbar spine, bipolar disorder, and personality disorder with anti-social traits; Szumylo does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; Szumylo has the residual functional capacity to perform light work in that he is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk two hours in the workday, sit six hours in the workday, push or pull without restriction and occasionally climb, balance, stoop, kneel, crouch and crawl, he has some difficulty reading, he cannot work at a production-level pace, he can do goal-oriented work, simple, routine tasks requiring only occasional decision-making and work entailing occasional interaction with supervisors and co-workers and no interaction with the public; Szumylo is unable to perform any past relevant work; considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Szumylo can perform; and Szumylo has not been under a disability from March 23, 2007. (TR 7–19) With the Disability Review Board having failed to complete its review within ninety days of the ALJ's decision, that decision became to final decision of the Commissioner. (TR at 1–3)

### III. The Standard of Review

Szumylo is seeking review of the Commissioner's final decision pursuant to the

---

2. The abbreviation "TR" refers to the administrative record (# 12).

Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act"). The Act provides, in relevant part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow ... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence,* shall be conclusive ...

Title 42 U.S.C. § 405(g) (emphasis added).

■ The Court's role in reviewing a decision of the Commissioner under this statute is circumscribed:

We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' *Sullivan v. Hudson,* 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). The Secretary's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

*Manso–Pizarro v. Secretary of Health and Human Services,* 76 F.3d 15, 16 (1 Cir., 1996); *see also Reyes Robles v. Finch,* 409 F.2d 84, 86 (1 Cir., 1969) ("And as to the scope of court review, 'substantial evidence' is a stringent limitation.").

■ The Supreme Court has defined "substantial evidence" to mean " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Irlanda Ortiz v. Secretary of Health & Human Services,* 955 F.2d 765, 769 (1 Cir., 1991). It has been explained that:

In reviewing the record for substantial evidence, we are to keep in mind that 'issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.' The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

*Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1 Cir., 1981) (*quoting Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1 Cir., 1981)); *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1 Cir., 1981) ("In any event, whatever label the parties or the court ascribe to the procedure used to review the Secretary's decision, statute and long established case law make clear that the court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements." (citations omitted)).

In other words, if supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *Ward v. Commissioner of Social Security*, 211 F.3d 652, 655 (1 Cir., 2000); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1 Cir., 1999) (per curiam).

Lastly,

Even in the presence of substantial evidence, however, the Court may review conclusions of law, *Slessinger v. Sec'y of Health & Human Servs.*, 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (*citing Thompson v. Harris*, 504 F.Supp. 653, 654 [D. Mass. 1980] ), and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts,' *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam).

*Musto v. Halter*, 135 F.Supp.2d 220, 225 (D.Mass., 2001).

### IV. Discussion

The plaintiff challenges the Commissioner's decision at step five of the standard five-step evaluation process. To place the issue in context, at step four the ALJ determined, *inter alia*, that Szumylo could not return to his past relevant work and that his residual functional capacity included non-exertional limitations. Consequent to these non-exertional limitations, the ALJ could not rely solely on the Medical–Vocational Guidelines ("the Grid") to determine disability. Rather, it was incumbent on the ALJ to take testimony from a vocational expert on the question of the plaintiff's ability to perform other jobs. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 996 (1 Cir., 1991)("Where a claimant

has non-exertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform. The question whether the Secretary may rely on the Grid in these kinds of situations depends on whether claimant's non-exertional impairment significantly affects [a] claimant's ability to perform the full range of jobs at the appropriate strength level. If the occupational base is significantly limited by a non-exertional impairment, the Secretary may not rely on the Grid to carry the burden of proving that there are other jobs a claimant can do. Usually, testimony of a vocational expert is required." (internal citations and quotation marks omitted)). Although a vocational expert did, in fact, testify at Szumylo's administrative hearing, the plaintiff contends that the ALJ was not justified in relying on the vocational expert's testimony to conclude that he was able to perform the jobs of night security guard, DOT 372.667–010 [3], an inserter, DOT 920.687–062, and a sorter, DOT 920.687–118. As a consequence, Szumylo argues that the ALJ's decision at step five was not supported by substantial evidence.

At the administrative hearing, the ALJ queried the vocational expert whether her "testimony today [would] be consistent with the *DOT* and its companion publications," to which the vocational expert responded, "[y]es, it will be." Thereafter the ALJ posed hypothetical questions to the vocational expert, one of which was as follows:

someone who has the same exertional limitations:

lifting and carrying 20 pounds occasionally, and 10 pounds frequently; standing

---

3. The parties agree that the job of night security guard, DOT 372.667–010, is outside of Szumylo's residual functional capacity and so it shall not be considered. *See* # 14 at 5–6; # 17 at 9.

and walking for two, sitting for six; with the occasional postural limitations; this individual has some difficulty reading; this individual cannot work at a production level pace, but could do goal-oriented work; this individual is limited to simple, routine tasks requiring only occasional decision-making; and this individual would have only occasional interaction with coworkers and the general public, are there any jobs that this hypothetical individual could do?

TR at 75.

The vocational expert answered that such an individual could perform the jobs she had previously identified, i.e., a night guard, security guard (DOT 372.667–010), an inserter (DOT 920.687–062) and a linen sorter (DOT 920.687–118), albeit the number of jobs would have to be reduced. (TR at 74–75) The vocational expert was thereafter examined by Szumylo's attorney, but during this examination the attorney asked no questions with respect to the phrase "cannot work at a production level pace" as used in the ALJ's hypothetical, what the limitation meant or how it applied in the context of the jobs detailed by the vocational expert. (TR at 76–79)

Szumylo now complains that the vocational expert should have defined the meaning of the phrase "cannot work at a production level pace" because that limitation is not defined in the Commissioner's rulings and regulations.[4] (# 14 at 8) Moreover, according to the plaintiff, it was the vocational expert's duty to explain how this limitation "would be compatible with the jobs [she] identified." (# 14 at 8) Because the ALJ did not address the "conflict" between the vocational expert's testimony with respect to Szumylo's inability to "work at a production level pace" and the DOT jobs of inserter and linen sorter iden-

4. This general concept is discussed within the context of disability evaluations of mental disorders, specifically in the category of concentration, persistence or pace. "In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective." *See* http://www.socialsecurity.gov/disability/professionals/bluebook/12.00–MentalDisorders–Adult.htm. A limitation based on production level has been employed in other cases. *See, e.g., Hathaway v. Commissioner of Social Security*, 238 F.3d 421 (Table), 2000 WL 1800484, *4 (6 Cir., Nov. 28, 2000)("The claimant has the residual functional capacity to perform light work in a low-stress environment with *no production level* and no dealing with the public."(emphasis added)); *Jones v. Astrue*, 2010 WL 3657896, *9 (W.D.N.C., Sept. 14, 2010)("The ALJ assessed the Plaintiff's Residual Functional Capacity (RFC), finding that he could perform a full range of work at all exertional levels, but had the following non-exertional limitations: that the work require the understanding and following of only simple instructions and the performance of repetitive tasks but only at low stress, *non-production levels*, work which does not cause shortness of breath or palpitations, which only requires limited social contacts, and does not require exposure to heat or hazards." (emphasis added)); *Ankrom v. Astrue*, 2009 WL 1916343, *9 (N.D.W.Va., July 1, 2009)("She would have moderate impairments in her ability to perform and complete work tasks in a normal work day or week at a consistent pace; work in cooperation with or in proximity to others without being distracted by them; perform *at production levels* expected by most employers ..." (emphasis added)); *Flagg v. Commissioner of Social Sec.*, 2002 WL 373466, *3 (E.D.Mich., Feb. 19, 2002)("Moreover, the hypothetical posed to the Vocational Expert did include Flagg's nonsevere functional limitation, as the hypothetical stated that Flagg 'should not be asked to carry out complex job assignments,' and that he 'should not be asked to deal with high levels of stress or *high production levels.*'" (emphasis added)).

tified by the vocational expert, the ALJ is said to have failed to comply with the requirements of Social Security Ruling 00–4p (SSR 00–4p).

The plaintiff's argument is unavailing. SSR 00–4p has as its stated purpose:

This Ruling clarifies our standards for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs), vocational specialists (VSs) who provide evidence to disability determination services (DDS) adjudicators, and other reliable sources of occupational information in the evaluation of disability claims. In particular, this ruling emphasizes that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must:

* Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and

* Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00–4p.

Of particular import for present purposes, the ruling further provides that:

Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hear-

ings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00–4p.

In this case, however, there is no apparent conflict or inconsistency between the vocational expert's evidence and the DOT.

The vocational expert testified that her evidence would be "consistent with the *DOT* and its companion publications." The DOT descriptions for the jobs identified by the vocational expert are:

TITLE(s): CARDBOARD INSERTER (knitting)

Inserts cardboard in stretchable socks to shape socks for display: Places cardboard insert through opening in sock form and pulls sock over form. Removes sock containing insert from form. May be designated Tissue Inserter (knitting).

DOT 920.687–062.

TITLE(s): LINEN–SUPPLY LOAD–BUILDER (laundry & rel.)

Assembles laundered uniforms and linen for DRIVER, SALES ROUTE (retail trade; wholesale tr.) of linen supply establishment, according to load sheet showing quantity, description, size, or color of articles requisitioned. May attach labels, emblems, and monograms to articles, such as industrial uniforms, using sewing machines.

DOT 920.687–118.

These DOT descriptions are silent with respect to the pace at which the jobs must

be performed, production level or otherwise.

■ There is no actual conflict between the vocational expert's evidence that Szumylo could perform the jobs of inserter and linen sorter even with the limitation of not at "a production level pace" and the DOT job descriptions. "A direct and obvious conflict exists when the VE's 'characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill provided for that job in the DOT.'" *Cooper v. Commissioner of Social Sec. Admin.*, 2011 WL 61613, *7 (N.D.Tex., Jan. 6, 2011) (quoting *Carey v. Apfel*, 230 F.3d 131, 145 (5 Cir., 2000)). Such is not the case here. The ALJ did not run afoul of her obligations under SSR 00–4p when there was no apparent inconsistency or conflict between the vocational expert's evidence and the DOT to be resolved.[5] *See, e.g., Teskey v. Astrue*, 2011 WL 1636924, *8 (S.D.Ind., Apr. 29, 2011) ("Because the Dictionary of Occupational Titles 'does not address the subject of sit/stand options, it is not apparent that the testimony [referencing such an option] conflicts with [it].' *Zblewski v.*

*Astrue*, 302 Fed.Appx. 488, 494 (7th Cir. 2008)[6] (upholding denial of benefits). The conflict, if one exists, is a latent one only; therefore, ALJs needn't resolve it at the hearing if no one notices it. *Id.*" (footnote omitted)).

■ The vocational expert's testimony provided substantial evidence upon which the ALJ could rely in finding that there are jobs that exist in significant numbers in the national economy that Szumylo can perform. The ALJ was justified in relying on that expert testimony. There was no error at step five of the evaluation process.

### V. Conclusion

For all the reasons stated it is ORDERED that Plaintiff's Motion For Order Reversing The Decision Of The Commissioner (# 13) be, and the same hereby is, DENIED. It is FURTHER ORDERED that Defendant's Motion For Order Affirming Commissioner, Etc. (# 16) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.

September 30, 2011.

---

5. Although the plaintiff attempts to analogize the "work at a production level pace" limitation to the sit/stand limitation about which the vocational expert testified, the Commissioner notes that there is a distinction to be made: "[T]he ALJ's hypothetical limited the individual to a range of light work, as the hypothetical could only stand/walk for two hours in an eight-hour day ... which is less than what is required for a full range of light work. See 20 C.F.R. § 404.1567(b); SSR 83–10 (noting that the 'full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.') As the vocational expert identified positions that were classified as light work ..., the ALJ was obligated to seek an explanation for the inconsistency." (# 17 at 10–11 n. 4) Again, there is no apparent conflict *vis-a-vis* the "work at a production level

pace" limitation and the DOT that would require an explanation.

6. In *Zblewski*, the Seventh Circuit wrote:

> Social Security Ruling 00–4p requires the ALJ to identify and explain any conflict between the *DOT* and VE testimony. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir.2006). However, we have recently held that the duty to inquire arises only when the conflict between the *DOT* and VE testimony is apparent. *See Overman v. Astrue*, 546 F.3d 456, 463–64 (7th Cir.2008). Because the *DOT* does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the *DOT*.

*Zblewski v. Astrue*, 302 Fed.Appx. 488, 494 (7 Cir., 2008).