NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0859n.06

Case No. 14-5421

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER DONTA FORREST, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

**FILED**
Nov 17, 2014
DEBORAH S. HUNT, Clerk

BEFORE: COOK and WHITE, Circuit Judges; MICHELSON, District Judge.[*]

COOK, Circuit Judge. Christopher Forrest appeals a district court judgment affirming the Social Security Administration's denial of his application for child's insurance benefits and Supplemental Security Income. He challenges the denial on procedural and substantive grounds. We AFFIRM.

I.

Forrest was twenty-one years old when he first applied for benefits in June 2008. He completed the eleventh grade and attended community college for about two months. He occasionally bussed tables and worked as a cashier at his family's restaurant and convenience store during the period relevant to his claim, but otherwise has no work experience.

---

[*]The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

*A. Treatment Record & Medical Evidence*

In October 2006, Forrest sustained a gunshot wound that fractured his right hip. He underwent three operations to address that injury: an initial "cannulated screw fixation" the day after the shooting, an operation later that month to replace some of the screws installed during the first operation, and, ultimately, a full hip replacement in August 2009 after an x-ray revealed avascular necrosis.

Along with the surgeries, Forrest sought medical treatment for hip and back pain several times between 2006 and 2011. He was in a car accident a few weeks before the shooting, and reported back pain during a visit to the emergency room in late September 2006. In November, two weeks after his second surgery, he again complained of back pain during an emergency room visit. He again reported to the emergency room with lower back and hip pain in April 2007 after he fell while lifting his daughter at Wal-Mart. An x-ray revealed that his hip fracture had not fully healed. A month later, he returned to the emergency room with lower back pain.

Forrest did not seek treatment again until March 2009, when he visited the emergency room three times. During his first visit, he reported that he had fallen and twisted his leg. He rated the pain as 7 and later 8 on a scale of 1 to 10, with 10 being the worst pain possible. An x-ray revealed that his fractured hip was still healing but showed no evidence of a new fracture. One week later, he reported aching, stabbing, and throbbing sensations in his hip, and rated his level of pain at 7 out of 10. During his third visit, Forrest rated his pain as 9 or 10 out of 10, but was "ambulatory with [a] cane" when the hospital discharged him later that day. (R. 7-11, Mar. 24, 2009 Medical Record.) Forrest again visited the emergency room two months later, claiming that a sudden onset of hip pain prevented him from bearing his own weight.

In August 2009, Dr. Alan Pechacek of the Jackson Clinic identified possible avascular necrosis of the femoral head in an x-ray of Forrest's hip, and replaced the hip the following week. X-rays taken two weeks later showed no evidence of complications from the surgery.

Forrest attended eighteen physical therapy sessions over the next few months. At one point, he reported to his therapist that he did not use a cane or crutch over the previous weekend. During a later session, his therapist observed that he walked without a limp. By his final session, he had "some weakness" in his hip but was "progress[ing] well with his weight bearing and strength exercises." (R. 7-13, Nov. 12, 2009 Physical Therapy Discharge Summary.)

Dr. Pechacek also observed Forrest's improvement in the months following his surgery. During a visit in October 2009, Forrest stated that he experienced only "fairly mild" hip pain and walked without his cane most of the time, and Dr. Pechacek noted only a "minimal limp." (R. 7-13, Oct. 30, 2009 Medical Record.) Two months later, Forrest displayed some weakness and pain but his gait was "near normal." (R. 7-13, Dec. 14, 2009 Medical Record.) Dr. Pechacek encouraged him to exercise regularly and start a walking program.

In April 2010, Forrest told Dr. Pechacek that he experienced "rather mild pain in the hip and thigh" and "some soreness after standing and walking for about 15 to 20 minutes," which he treated with one Tylenol per day. (R. 7-14, Apr. 16, 2010 Medical Record.) Dr. Pechacek observed that Forrest's gait was "essentially normal" and he was able to flex his hip while sitting without pain, but also that he was a "little more unsteady" on his right side. He concluded that Forrest was "doing quite well" but "need[ed] to increase his activity level [and] get back to some sort [of] work even if it is helping his sisters at their store."

During a visit to Dr. Pechacek three months later, Forrest reported "aches and pains in the hip and back with prolonged standing and walking" and complained of some tenderness in his

hip. (R. 7-14, July 27, 2010 Medical Record.) He told Dr. Pechacek that he had been helping with "cashier type work" at the family restaurant. Dr. Pechacek observed some stiffness and a "limited limp." According to Forrest's medical records, Dr. Pechacek advised Forrest that he would have to "put up with a certain amount of discomfort" but needed to "get on with his life."

Forrest fell while moving furniture down stairs in July 2011. He reported feeling pain "mostly in the front of the hip." (R. 7-14, July 12, 2011 Medical Record.) Dr. Pechacek observed that Forrest was walking with a limp and using a cane. X-rays revealed "no obvious fractures or dislocations." Dr. Pechacek prescribed a walker and Oxycodone and advised Forrest to rest for a few days.

## B. Administrative Proceedings

Forrest applied for child's insurance benefits[1] and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–33, 1381–83f, in June 2008, alleging disability as of October 7, 2006 (the date he sustained the gunshot wound). After the Social Security Administration denied Forrest's claim for benefits, initially and upon reconsideration, Forrest represented himself at a hearing before an administrative law judge (ALJ) in July 2011.

The ALJ followed the five-step sequential analysis set forth in 20 C.F.R. § 404.1520, and ultimately found Forrest not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). The ALJ explained that Forrest suffered from "severe impairments," including "status post total right hip arthroplasty for avascular necrosis status post gunshot wound," that did not "meet or medically equal[] the severity" of an impairment described in 20 C.F.R. Part

---

[1] A claimant is eligible for child's insurance benefits so long as the claimed disability began before age twenty-two. 20 C.F.R. § 404.350(a)(5). Forest was twenty years old when he sustained the gunshot wound.

404, Subpart P, Appendix 1. (R. 7-3, ALJ Decision 3–4.) According to the ALJ, Forrest retained the "residual functional capacity" to perform sedentary work that does not require "gross visual far acuity" and includes a "sit/stand option."[2] (*Id.* at 4.) He found Forrest's testimony about the severity of his symptoms only partially credible in light of objective evidence in the record, including Forrest's reports of driving, shopping, traveling, walking without a cane, lifting his daughter, and carrying furniture down stairs. After considering the testimony of a vocational expert, the ALJ determined that Forrest could perform jobs that exist in significant numbers in the national economy, and therefore was not disabled within the meaning of the Social Security Act.

The Social Security Appeals Council denied Forrest's request for review, making the ALJ's decision the final decision by the Commissioner in Forrest's case. Forrest sought review in federal court under 42 U.S.C. § 405(g). The district court affirmed the Commissioner's decision, and Forrest appeals.

II.

Forrest argues that the ALJ erred by (1) failing to discharge his heightened duty to develop the record on behalf of an unrepresented claimant, (2) declining to explain why Forrest's impairments did not meet or equal in severity a listed impairment, and (3) providing insufficient reasons to discount Forrest's credibility. We review the district court's decision de novo, and must affirm the denial of benefits unless the ALJ applied the wrong legal standard, made findings of fact unsupported by substantial evidence, or failed to follow regulations governing disability determinations and, in doing so, prejudiced Forrest on the merits or deprived him of a

---

[2]Forrest claimed disability due, in part, to vision loss. He mentions his vision loss in his appellate "statement of the facts" but advances no arguments with respect to that disability.

substantial right. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009) (citing

42 U.S.C. § 405(g)); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)).

A. *Heightened Duty to Develop the Record*

Forrest relies on *Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048, 1051–

52 (6th Cir. 1983), to argue that the ALJ failed to discharge his heightened duty to develop the

record on behalf of an unrepresented claimant. He identifies at least four alleged deficiencies in

the ALJ's performance of that duty.

First, Forrest argues that the ALJ erred in concluding his hearing after only fifteen

minutes, noting that we found a twenty-five-minute hearing insufficient in *Lashley*. *Id.* at 1052.

But *Lashley* directed courts to determine on a case-by-case basis whether the ALJ satisfied his

heightened duty to develop the record fully on behalf of a pro se claimant, and established no

bright-line rule requiring ALJs to conduct hearings of certain lengths. *Id.* In this case, a fifteen-

minute hearing sufficed because the record included thorough documentation of Forrest's

surgeries and treatment for hip pain, and the ALJ needed little time to inquire into his negligible

work experience. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.

1986) (explaining that the ALJ adequately developed the record during a "relatively short

hearing").

Forrest's second argument—that the ALJ failed to inquire about the full extent of his

symptoms—is similarly unavailing. Whatever the merits of the ALJ's refusal to let Forrest

discuss his pre-April 2009 symptoms at the hearing, we cannot see how Forrest's testimony

about those symptoms would have altered the outcome. The ALJ mentioned at the hearing that

he read Forrest's entire file, which included records of Forrest's subjective reports of pain dating

back to 2006, and he described Forrest's reports of pain in April 2007, March 2009, and May 2009 in his decision. And, in general, the ALJ found Forrest's claims of incapacitating pain not credible and inconsistent with objective evidence. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence."); *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990) (citing *Duncan*, 801 F.2d at 856) ("Even if the ALJ had questioned claimant in greater detail concerning his ability to sit or stand, claimant's subjective complaints of pain must be supported by objective evidence.").

Third, Forrest argues that the ALJ should not have permitted the vocational expert to testify from his "work experience" that four jobs listed in the *Dictionary of Occupational Titles* (*DOT*) include a "sit/stand" option. He maintains that the ALJ defied Social Security Ruling 00-4p, which requires ALJs to "elicit a reasonable explanation" for any "apparent unresolved conflict" between vocational experts' testimony and *DOT* job descriptions. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). But the *DOT* does not discuss whether jobs have a sit/stand option, *see Baranich v. Barnhart*, 128 F. App'x 481, 486 n.3 (6th Cir. 2005), and therefore the vocational expert's testimony supplemented, rather than conflicted with, *DOT* job descriptions. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (finding no conflict where a vocational expert testified about an occupation that did not specifically appear in the *DOT*); *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) ("Because the *DOT* does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the *DOT*.").

Finally, we reject Forrest's unsupported and undeveloped argument that the ALJ needed to obtain Dr. Pechacek's "findings and opinions" in order to fully develop the record. Under the then-applicable regulations, ALJs sought additional evidence from treating physicians only when they could not determine disability from previously-provided evidence, *see* 20 C.F.R. §§ 404.1512(e), 416.912(e) (2011), and the ALJ in Forrest's case found the existing record sufficient. Further, Forrest provides no support for his implied argument that Dr. Pechacek, if asked, would have opined that he was disabled. If anything, Dr. Pechacek's treatment notes suggest the opposite: for instance, he noted in April 2010 that he had advised Forrest "to increase his activity level [and] get back to some sort [of] work even if it is helping his sisters at their store." (R. 7-14, Apr. 16, 2010 Medical Record.)

## B. The ALJ's Step-Three Analysis

Forrest also challenges the ALJ's finding at step three of the Social Security Administration's five-step inquiry for adjudicating disability claims that Forrest's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In support of that finding, the ALJ stated only that "[t]he record does not contain any clinical findings or diagnostic laboratory evidence of an impairment or combination of impairments that would meet the requirements for any listed physical impairment." (R. 7-3, ALJ Decision 4.) Forrest did not argue before the ALJ that his impairments met or medically equaled in severity a specific listing.

Forrest contends that the ALJ's sparse step-three analysis requires us to remand, either because the ALJ failed to follow agency regulations, denying Forrest an important procedural right, or because the ALJ's failure to explain his findings precludes substantial-evidence review. We reject both arguments.

*1. Sufficiency in Light of Social Security Regulations*

Forrest first contends that we must remand because, in his view, the ALJ failed to follow Social Security Administration regulations by providing scant reasons for his step-three findings. But he relies on an inapposite case, *Wilson v. Commissioner of Social Security*, which holds that a reviewing court must reverse and remand if an ALJ fails to provide "good reasons" under 20 C.F.R. § 404.1527(d) for rejecting all or part of a treating physician's opinion. 378 F.3d 541, 544–48 (6th Cir. 2004). *Wilson* distinguished between agency rules that create an "important procedural safeguard for claimants" and rules "adopted for the orderly transaction of business," placing the "good reasons" requirement squarely within the first category. *Id.* at 547 (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)). Thus, this court rejected the Commissioner's argument that the ALJ's explanatory failures were harmless, explaining that:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . . . To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546.

In subsequent cases, we declined to apply "*Wilson*'s circumscribed form of harmless error review . . . outside the context of the reasons-giving requirement of § 404.1527(d)(2)." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655–57 (6th Cir. 2009) (holding that rule requiring Social Security Administration to record in a "standard document" how it applied a "special technique" for evaluating mental impairments," 20 C.F.R. § 404.1520a(e), creates no procedural safeguard for claimants); *see also Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399–

401 (6th Cir. 2008) (holding that regulation stating that ALJ will not apply age categories mechanically, 20 C.F.R. § 404.1563(b), imposes no "procedural explanatory requirement"). And we decline Forrest's invitation to extend *Wilson* to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry, especially where Forrest did not argue at the hearing that he met a particular listing. Importantly, the regulations governing the five-step inquiry require only that the ALJ "consider all evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(a)(3), and, at step three, "consider the medical severity of [the claimant's] impairment(s)," *id.* § 404.1520(a)(4)(iii). *See Bowie*, 539 F.3d at 400 (distinguishing requirement that ALJ "consider" from requirement that he give "good reasons").

### 2. Sufficiency in Light of Substantial-Evidence Standard

Finding *Wilson* inapplicable does not end our inquiry, because Forrest also argues that the ALJ's sparse analysis precludes meaningful judicial review of his step-three findings. He grounds his argument on a Fifth Circuit opinion finding another ALJ's sparse step-three analysis "beyond meaningful judicial review." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that 42 U.S.C. § 405(b)(1) "explicit[ly]" required the ALJ to explain why she found the claimant not disabled at step three). Forrest urges us to find the ALJ's decision similarly wanting and remand for additional findings.

In response, the Commissioner urges us to uphold the ALJ's step-three findings, either because they are supported by substantial evidence in the record, or because we can infer the ALJ's reasoning from factual findings made elsewhere in the opinion. In support of her first argument, she cites a recent non-precedential opinion in which this court located substantial evidence in the record that supported an ALJ's unexplained step-three findings. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (per curiam).

- 10 -

Regardless of *Malone*'s deferential "substantial evidence" standard, here the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time"); *see also Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 417 (6th Cir. 2014) (Moore, Circuit J., dissenting) (acknowledging that an ALJ's step-three analysis was "cursory" but suggesting that, under our precedent, it is enough for the ALJ to support his findings by citing an exhibit where the *exhibit* contained substantial evidence to support his conclusion).

Forrest posits that his hip impairment meets Listing 1.02, "Major dysfunction of a joint[]," and Listing 1.03, "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint." 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.02, 1.03. Both listings include as an element the "inability to ambulate effectively," which the regulations define, in relevant part, as "an extreme limitation of the ability to walk." *Id.* § 1.00B2b(1). An individual cannot ambulate effectively if, for example, he is unable to walk "without the use of a walker, two crutches[,] or two canes" or "carry out routine ambulatory activities, such as shopping and banking." *Id.* § 1.00B2b(2). To meet either listing, Forrest must also show that his inability to ambulate lasted or can be expected to last for at least twelve months. *Id.* § 1.00B2a. Here, the ALJ's factual findings support the conclusion that Forrest could "ambulate effectively" for most of the relevant period. For instance, the ALJ found that Forrest (1) fell while lifting his daughter in Wal-Mart in April 2007, (2) could walk without a cane in November 2009, and (3) moved furniture down stairs in July 2011.

And even if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment between October 2006 and July 2011. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (finding that an ALJ erred by providing no reasons to support his finding that a specific listing was not met, and holding that the error was not harmless because it was possible that the claimant had put forward sufficient evidence to meet the listing); *cf. Audler*, 501 F.3d at 448–49 (declining to find lack of step-three explanation harmless where claimant carried her burden of showing that she met a listing). The record shows that Forrest used one cane at most, often went without, and could otherwise ambulate effectively during the relevant period. We reject Forrest's argument that the record necessarily shows that his impairments met or equaled Listing 1.02 and Listing 1.03.

*C. Credibility Finding*

Finally, we find no merit in Forrest's suggestion that the ALJ made only a "boilerplate" credibility finding in violation of Social Security Administration policy. *See* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). He grounds that argument on a single sentence early in the ALJ's decision, ignoring the ALJ's thorough explanation elsewhere of his reasons for doubting Forrest's account.

III.

For those reasons, we AFFIRM the judgment of the district court.