**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0319n.06

**No. 19-2180**

<table>
<tr><td>

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

DONNIE JONES,

     Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant-Appellee.

</td><td>

)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**
Jun 03, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES COURT
FOR THE WESTERN
DISTRICT OF MICHIGAN

</td></tr>
</table>

**BEFORE: DAUGHTREY, GIBBONS, and MURPHY, Circuit Judges.**

JULIA SMITH GIBBONS, Circuit Judge. Donnie Jones challenges the Commissioner of Social Security's ("Commissioner") determination that he is not disabled and therefore not entitled to disability insurance under Title II of the Social Security Act. Jones contends the Administrative Law Judge ("ALJ") who heard his case made two errors. First, Jones argues the ALJ failed to consider his use of a cane, an oversight that Jones contends produced multiple reversible errors. Second, Jones insists that the ALJ improperly classified Jones's past relevant work. Because Jones did not produce evidence that he required a cane and because the ALJ properly classified Jones's past relevant work, we affirm the district court's decision declining to disturb the Commissioner's determination that Jones is not entitled to disability insurance.

I.

In the spring of 2014, Jones injured his back working on a car engine at his home. In July of that year, still suffering from back pain resulting from the accident, Jones visited Bridgman Family & Internal Medicine ("Bridgman"). There, he reported having lower back pain "radiat[ing]

to [his] left thigh," that is "aggravated by bending, position and standing." DE 9-7, Medical R., Page ID 405, 408. When Jones returned to Bridgman later that month, he "exhibit[ed] decreased range of motion, tenderness, bony tenderness[,] and pain" in his lumbar back. *Id.* at 417. Bridgman recommended that Jones begin physical therapy.

The following month, Jones visited a physical therapist, Simi Jain. Jain noted that Jones had normal posture, that his gait was at a "[s]low pace," that he experienced pain when bending and rotating, and that he arrived using a cane. *Id.* at 297. Jain recommended Jones have weekly or even bi-weekly physical therapy visits, but at his physical therapy appointment three days later, Jones told Jain that he wanted to undergo more tests before beginning physical therapy.

Jones returned to Bridgman a few days later complaining that physical therapy had increased his pain. Jones still had normal strength and gait, but his range of motion had decreased since physical therapy. Bridgman ordered an MRI of Jones's spine and prescribed a transcutaneous electrical nerve stimulation ("TENS") unit. Jones declined to continue physical therapy until he received the results of the MRI.

The MRI found "spondylotic changes at L4-L5 and L5-S1 with mild posterior disc bulging and herniation . . .[,] mild relative L4-L5 spinal stenosis[, and] mild right-sided L5-S1 neuroforaminal impingement." *Id.* at 459. Based on the results, Jones was referred to a neurosurgical consult and advised to undergo physical therapy and use the TENS unit. Yet, a week later, Jones again declined physical therapy. During his neurosurgical consultation, Jones exhibited "no neurological deficits" and was advised to pursue "conservative treatment measures," including physical therapy and muscle exercises. *Id.* at 352–53. Doctors still observed that Jones had a normal gait and normal range of motion.

Another MRI in January 2015 revealed multiple central disc protrusions and other diffusely bulging discs, in addition to the issues identified in the earlier MRI. At the time, doctors observed he had a normal gait. In March 2016, Jones again sought treatment for pain in his hands, lower back, and neck at Michigan Spine, Sports & Occupational Rehab. Jones attempted physical therapy, received a medial branch block and a steroid injection. Jones continued therapy there throughout 2016; as late as September and October 2016, doctors observed normal gait and no need for any assistive devices.

At his hearing before an ALJ in January 2017, Jones testified that he had neck pain and numbness in his right hand, difficulty looking over either shoulder, and persistent pain in his lower back that sometimes radiated to his legs. Jones added that he could not stand for more than twenty minutes, could only walk for about one city block without needing a break, and had difficulty lifting objects.

Jones also testified about his employment history. He was a security guard for the Benton Harbor Area Schools from 1995 to 2012. Jones testified that, in that role, he spent about half the time sitting and the other half walking around the school and would sometimes have to lift teenagers off one another to break up fights. A vocational expert testified that this work was "light and semiskilled" but "at times, performed at heavy." DE 9-2, Hr'g Tr., Page ID 122.

Jones worked as a security guard for Armor Knight Security from August 2013 to January 2014. There, he earned $4712.00 in 2013 and $1168.00 in January 2014. Jones testified that, at Armor Knight Security, he would mostly sit at his post but would occasionally patrol the building by foot. He did not drive or perform any lifting while working for Armor Knight Security. The

vocational expert testified that this job was "performed at sedentary." *Id.* at 122. Jones is currently unemployed.

On April 24, 2017, the ALJ issued a decision concluding that Jones was not eligible for disability benefits. Although Jones had several "severe impairments," including "multilevel cervical and lumbar degenerative disc disease[] and obesity," DE 9-2, ALJ Decision, Page ID 48, the ALJ concluded that Jones's impairments did not "meet[] or medically equal[] the severity of one of the listed impairments." *Id.* at 49. The ALJ specifically concluded that Jones's degenerative disc disease did not medically equal Listing 1.04, which specifies the symptoms of a spinal- or lumbar-disability.

Given Jones's impairments, the ALJ concluded that Jones remained capable of performing sedentary work, provided he did not "climb ladders, ropes, or scaffolds[;] kneel, crouch, or crawl," and only "occasionally climb[ed] ramps and stairs, balance[d], and/or stoop[ed]." *Id.* at 49. The ALJ chose not to credit Jones's testimony about the severity of his impairments because it was inconsistent with medical records that revealed no abnormal gait, no strength loss, no medical restrictions on his activities, and no "clinical observations that [Jones] had difficulty ambulating," *id.* at 52, and noted that Jones had repeatedly declined physical therapy. Indeed, the ALJ reached the conclusion that Jones was capable only of performing sedentary work only by affording Jones "an extreme benefit of the doubt." *Id.* at 53.

Turning to Jones's past prior work, the ALJ found that Jones's only past relevant work was as a security guard. Based on the Dictionary of Occupational Titles and the vocational expert's

testimony that some of the work was performed at the sedentary level, the ALJ concluded that Jones's residual capacity allowed him to continue his prior work as a security guard.

Jones sought review of the decision before the United States District Court for the Western District of Michigan. The district court affirmed the ALJ's decision. Jones timely appealed.

II.

The Social Security Administration ("SSA") provides disability insurance benefits to people under retirement age who become disabled. 42 U.S.C. § 423(a). A claimant must file an application for disability, demonstrating to the SSA that, as the result of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months," he is "unable to do his previous work" and also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." *Id.* § 423(d)(1)(A), (d)(2)(A). We have previously described the five-step process employed by the SSA as follows:

> A "five-step sequential evaluation process" guides efforts to implement these two requirements. 20 C.F.R. § 404.1520 (authorized by 42 U.S.C. § 405(a)); 20 C.F.R. § 416.920(a) (authorized by 42 U.S.C. § 1383(d)(1)); *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The Administration checks (1) if the person is not engaged in gainful activity, (2) if she has a severe, medically verifiable physical or mental impairment, and (3) if she has a qualifying impairment that leads to a disability finding by default. 20 C.F.R. § 404.1520(a)(4). If this does not resolve her application, the Administration calculates her residual functional capacity, *id.*, which reflects what sorts of work she can do despite her impairment, *id.* § 404.1545(a)(1). If (4) she has held a job that someone with her residual functional capacity can still do or if (5) someone of her age, education, work experience, and residual functional capacity can adjust to other work available in the national economy, then she is not disabled. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

*Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931–32 (6th Cir. 2018). The claimant carries the burden of persuasion at all but Step Five. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir.

1999). A claimant denied disability benefits may request a hearing before an ALJ and later a federal district court to reconsider the SSA's decision. 42 U.S.C. §§ 405(b)(1), 405(g).

A claimant can appeal the district court's decision to this court. *Id.* § 405(g). Though we review *de novo* the district court's Social Security benefits decision, *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 898 (6th Cir. 2019) (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)), we affirm the Commissioner's decision so long as it was reached in accordance with agency rules and regulations, made applying the correct legal standards, and supported by substantial evidence. *Miller*, 811 F.3d at 833. "'Substantial evidence' is more than a scintilla but less than a preponderance." *Tweedle v. Comm'r of Soc. Sec.*, 731 F. App'x 506, 507 (6th Cir. 2018) (per curiam) (quoting *Miller*, 811 F.3d at 833). We defer to the ALJ's credibility determinations where those determinations are supported by substantial evidence. *Id.*

III.

Jones argues that the ALJ committed "multiple violations" at Step Three and Step Four of the sequential evaluation process. In his reply brief, Jones clarifies that each of these errors relates to the "ALJ's failure to consider whether [] Jones required an assistive device," specifically, a cane. CA6 R. 13, Reply Br., at 17. This argument is unavailing. At Step Three, a finding that Jones required a cane would not have affected the ALJ's conclusion that Jones's impairments failed to meet Listing 1.04(C) for lumbar spinal stenosis. A finding that Jones required a cane would have affected the Step Four analysis, but the record contains minimal evidence that Jones requires a cane.

A.

Jones argues that the ALJ's finding at Step Three that Jones's cervical and lumbar degenerative disease did not equal Listing 1.04(C) "failed to provide any sort of discussion

supporting the conclusion." CA6 R. 8, Appellant Br., at 43. Jones adds that the ALJ's explanation for why he failed to meet Listing 1.04(C) failed to account for how his use of a cane might render him unable to ambulate.

To satisfy Listing 1.04(C), Jones must demonstrate "[l]umbar spinal stenosis resulting in pseudoclaudication," with "findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting *in inability to ambulate effectively*." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04 (emphasis added). "Inability to ambulate effectively," means "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." *Id.* § 1.00(B)(2)(b)(1) (emphasis added).

In *Forrest v. Commissioner of Social Security*, we held that an ALJ's discussion of a Listing at Step Three was sufficient even where the ALJ did not discuss the claimant's alleged inability to ambulate as evidenced by possible use of a cane. 591 F. App'x 359, 366 (6th Cir. 2014). We held that even if the ALJ failed to sufficiently set out an explanation of her decision at Step Three, where the Listing required an "inability to ambulate" and the claimant "used one cane at most," any error was harmless because the claimant could not show that his impairment met or medically equaled the listing. *Id.* *Forrest* is directly on point. Even assuming a cane was medically necessary for Jones to ambulate, it is insufficient to demonstrate an inability to ambulate. As *Forrest* recognized, a cane cannot demonstrate an inability to ambulate because a claimant must need "hand-held assistive device(s)" in both hands to satisfy the definition. 20 C.F.R. § 1.00(B)(2)(b)(1); *Forrest*, 591 F. App'x at 366.

Moreover, there was plenty of evidence to support the conclusion that Jones was able to ambulate. Multiple doctors found that his gait was not significantly affected by his lower back injury.

Jones's use of a cane would not render him unable to ambulate under the regulations, and the record supports the ALJ's conclusion that Jones was not unable to ambulate. Accordingly, the ALJ made no error in failing to discuss Jones's use of a cane and finding that Jones did not meet Listing 1.04 at Step Three.

B.

Jones next argues that the ALJ incorrectly determined his residual functional capacity at Step Four. Jones identifies two errors. First, Jones asserts that the ALJ's determination of his residual functional capacity is overbroad because the ALJ failed to consider whether Jones required an assistive device. Second, Jones insists that the ALJ did not properly account for his medical impairments when making the residual functional capacity. Neither contention has merit.

Jones contends that the ALJ should have considered whether he needed a cane. Jones faults the ALJ for failing to discuss Social Security Ruling 96-9p, which guides an ALJ's analysis of when an assistive device is necessary. Social Security Ruling 96-9p explains that an ALJ should "find that a hand-held assistive device is medically required," only where there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 1996 WL 374185, at *7 (July 2, 1996).

Jones fails to produce any medical documentation establishing a need for a cane. His best evidence is an observation from his physical therapist, Simi Jain, that Jones came to the

appointment using a cane. But Jain merely noted that Jones was using a cane, she did not determine that a cane was medically necessary or suggest Jones use one to meet his treatment goals. Even if the single mention of the cane was "medical documentation establishing the need for a hand-held assistive device," a single notation of "cane" cannot possibly provide "the circumstances for which [the assistive device] is needed." Social Security Ruling 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The ALJ was not required to discuss such minimal evidence, especially given that no other evidence in the record supports a finding that a cane was medically necessary, and Jones never mentioned the need for a cane in his testimony. *See Kornecky v. Comm'r Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam) (explaining that an ALJ need not consider every piece of evidence).

Moreover, the ALJ explained in detail his residual functional capacity finding for Jones. At Step Four, the ALJ found that "there were no clinical observations that the claimant had difficulty ambulating." DE 9-2, ALJ Decision, Page ID 52. The ALJ pointed out that multiple doctors found that Jones's gait was not significantly affected by his lower back injury.

Jones also contends that "[t]he ALJ's residual functional capacity [findings] failed to properly account for a number of [] Jones'[s] medical impairments," including that Jones has difficulty standing for long periods of time because his lower back pain radiates into his legs. CA6 R. 8, Appellant Br., at 46. This argument also fails. Jones's evidence of his difficulty standing and radiating pain is largely drawn from his own testimony. The ALJ explained that, to the extent his residual functional capacity finding was inconsistent with Jones's testimony about the "intensity, persistence and limiting effects of these symptoms," it was because he was crediting "the medical evidence and other evidence in the record" over Jones's testimony. DE 9-2, ALJ Decision, Page ID 50. We defer to an ALJ's credibility determination so long as it is supported

by substantial evidence. *Tweedle*, 731 F. App'x at 507. Medical records revealing that multiple physicians, over a period of two years, found that Jones had a normal gait, provide substantial evidence to support this credibility determination.

Because the ALJ sufficiently explained his residual functional capacity finding and Jones failed to produce evidence demonstrating a medical need for a cane, the ALJ did not err in failing to explicitly consider whether Jones needed a cane.

IV.

Jones next argues that the ALJ incorrectly concluded that he could still perform his past work as a security guard. Jones contends that the ALJ impermissibly "lumped all of [his] past security job positions into one" when considering his past relevant work. CA6 R. 13, Reply Br., at 15. In the alternative, Jones argues that, if the ALJ did separate his work for Benton Harbor Area Schools from his work for Armor Knight Security, his work for Armor Knight Security cannot be past relevant work because he did not earn enough for the job to be classified as substantial gainful activity.

A claimant is "not disabled" unless "his physical or mental impairment or impairments are of such severity that he is . . . unable to do his previous work." 42 U.S.C. § 423(d)(2)(A). Prior employment constitutes past relevant work when it was "done within the past 15 years," was "substantial gainful activity," and the claimant did the work "long enough . . . to learn to do it." 20 C.F.R. § 404.1560(b)(1). In 2013, if an individual received $1040 per month from employment, the employment counted as substantial gainful activity. DI 10501.015 Tables of SGA Earnings Guidelines, Table 2, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015. In 2014, employment that paid $1070 per month was substantial gainful employment. *Id.* When a claimant "work[s] over a period of time during which the substantial gainful activity earnings

levels change," the ALJ must "average [the claimant's] earnings separately for each period in which a different substantial gainful activity earnings level applies." 20 C.F.R. § 404.1574a(b).

Jones contends the ALJ combined his work as a security guard for Benton Harbor Area Schools with his work for Armor Knight Security. The ALJ described Jones's prior work as follows:

> The vocational expert reviewed the claimant's work history and determined he has past work as stated above (Hearing Testimony). The undersigned reviewed the claimant's work history and notes that this work was performed within 15 years of this adjudication, and at the applicable substantial gainful activity levels for those years (Exhibits 4D). Although this was semi-skilled work, the record reflects that the claimant performed it for several years, and therefore he performed it long enough to learn it. Therefore, this work meets the criteria for past relevant work.

DE 9-2, ALJ Decision, Page ID 53. The ALJ then referenced the vocational expert's testimony that "the hypothetical individual would be able to perform the past relevant work mentioned above, despite the additional limitations noted," because Jones "performed [his work] at times at the sedentary exertional level." *Id.*

Those passages alone may be vague, but the hearing transcript and exhibits referenced in them make clear that when the ALJ determined that Jones could return to his prior work, he meant Jones could return to his prior work at Armor Knight Security. Jones testified that he had worked seventeen years as a security guard for Benton Harbor Area Schools and six months for Armor Knight Security. The vocational expert testified that only Jones's work at Armor Knight Security was performed at the sedentary exertional level. Thus, at least where Jones's residual functional capacity was concerned, the ALJ appeared to contrast, not combine, his work for Benton Harbor Area Schools and Armor Knight Security.

Jones contends that, even if the ALJ did consider his work for Armor Knight Security separately, the ALJ nevertheless erred because his work at Armor Knight Security could not

11

constitute past relevant work. But Jones's employment with Armor Knight Security easily satisfies both the timing and experience requirements. Jones worked at Armor Knight Security within the past fifteen years. 20 C.F.R. § 404.1560(b)(1). Additionally, the vocational expert testified that it would take only one to three months to learn the job, and Jones worked there for six months. And Jones earned enough at Armor Knight Security for his work there to count as substantial gainful activity. He made $1168 working for Armor Knight Security in January 2014, nearly $100 above the substantial gainful activity threshold of $1070.

None of Jones's arguments to the contrary are availing. First, he argues that the Commissioner had not previously raised this argument and thus waived it. But the Commissioner raised the very same argument to the district court. And the district court adopted that reasoning when affirming the ALJ decision.

Second, Jones contends that his job at Armor Knight Security did not constitute substantial gainful activity because he earned an average of $980 per month during the six months he worked there. But when a claimant "work[s] over a period of time during which the substantial gainful activity earnings levels change," the ALJ must "average [the claimant's] earnings separately for each period in which a different substantial gainful activity earnings level applies." 20 C.F.R. § 404.1574a(b). The substantial earnings threshold increased from $1040 in 2013, when Jones began working for Armor Knight Security, to $1070 in 2014 when Jones finished his tenure. DI 10501.015 Tables of SGA Earnings Guidelines, Table 2, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015. The ALJ was required to average Jones's earnings from Armor Knight Security in 2013 and then separately average his earning from 2014. And, in 2014, Jones exceeded the substantial gainful activity threshold.

Finally, Jones claims his work for Armor Knight Security was an unsuccessful work attempt. But an unsuccessful work attempt occurs when a claimant who worked "for a period of 6 months or less," is "forced to stop or to reduce below the substantial gainful activity level after a short time because of [her] impairment." 20 C.F.R. § 404.1574(a)(1), (c)(1). Jones's impairment did not cause him to leave Armor Knight Security; the accident creating his impairment happened *after* he left Armor Knight Security.

The ALJ correctly determined that Jones's work with Armor Knight Security was past relevant work. The vocational expert's testimony that Jones performed his work at Armor Knight Security at the sedentary level, combined with the ALJ's conclusion that Jones can still perform sedentary work, provide substantial evidence to support the ALJ's conclusion that Jones is capable of performing past relevant work. Because Jones can perform his past relevant work, the ALJ was not required to proceed to Step Five.

V.

Substantial evidence supports the Commissioner's determination that Jones is not entitled to disability insurance. Accordingly, we affirm the district court's decision declining to disturb the Commissioner's determination.