NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0098n.06

Case No. 21-3471

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

DONALD THOMAS, JR.,

    Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 04, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

---

Before: SILER, COLE, and NALBANDIAN, Circuit Judges.

SILER, Circuit Judge. An administrative law judge (ALJ) denied Donald Thomas, Jr.'s claim for social security disability insurance benefits. Because the ALJ applied the correct legal standards and substantial evidence supports his decision, we affirm.

I.

*Facts.* Donald Thomas, Jr., was born on December 11, 1969. He stands 6'3" tall, weighs 300 pounds, and has a high school education. He lives with his wife, his mother-in-law, and his daughter in Ravenna, Ohio.

For years Thomas worked as a warehouseman. As a warehouseman he had two primary duties: driving a tow motor and stocking shelves. He also worked for some time as a home-health

aide, assisting a friend who suffered from muscular dystrophy. He dressed the friend, helped him use the bathroom, cooked for him, and took him "wherever he needed to go."

But Thomas had two hip-replacement surgeries—the first in December 2015, the second in May 2016—and afterwards he faced a series of medical complications. Those complications included hip soreness, hip tenderness, neuropathic abnormalities in his feet and ankles, and a two-centimeter discrepancy between the length of his right leg and left leg.

Thomas saw a series of doctors in the months between and after his two surgeries. Most importantly for purposes of this appeal, he started seeing a neurosurgeon, Dr. Paul Hartzfeld, in April 2017. Dr. Hartzfeld regularly treated Thomas from April 2017 to July 2018. And on July 6, 2018, Dr. Hartzfeld filled out a medical questionnaire, a series of Yes/No questions about Thomas's health and ability to return to work. After diagnosing Thomas with cervical radiculopathy, Dr. Hartzfeld said Thomas also suffered from nerve root compression, pain, limited spinal motion, and weakened triceps. According to Dr. Hartzfeld, these symptoms would require Thomas to be off task 15% of the workday and cause him "to lay down or recline" while at work.

*Procedural History*. Thomas applied for social security disability insurance benefits on August 16, 2016, alleging a disability onset date of November 27, 2015. The Social Security Administration denied his claim in 2016, and later it denied his request for reconsideration. Thomas then received a hearing before an ALJ.

The ALJ issued a decision in 2018. That decision applied the five-step sequential analysis from 20 C.F.R. § 404.1520(a)(4). The ALJ analyzed each of the five steps. In step one, he found Thomas hadn't engaged in substantial gainful activity since 2015. In step two, he found Thomas suffers several severe physical impairments, namely obesity, status post-hip arthroplasty, degenerative disc disease of the lumbar and cervical spine, peripheral neuropathy, and obstructive

sleep apnea. And in step three he found that none of Thomas's impairments (and no combination of his impairments) meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Then he evaluated Thomas's residual functional capacity, i.e., his ability to work. *See* 20 C.F.R. § 404.1545(a)(1); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) ("In the fourth step, the SSA examines claimants' 'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'") (quoting § 404.1545(a)(1) (alterations in original)). This required the ALJ to weigh competing medical opinions. He gave little weight to the opinions of Dr. Jovan Laskovski, some weight to the opinions of Dr. Rannie Amiri and Dr. Linda Hall, and little weight to the opinions of Dr. Hartzfeld, the neurosurgeon who treated Thomas from April 2017 to July 2018. In the end, the ALJ found Thomas "has the residual functional capacity to perform sedentary work as defined by 20 CFR § 404.1567(a)[,] except he requires the use of a cane to ambulate." While he occasionally can "balance, stoop, kneel, crouch, and climb ramps and stairs," he can't "crawl or climb ladders, ropes, or scaffolds." He "can never work at unprotected heights, he can never work around moving mechanical parts, and he can never operate a motor vehicle." Given these limitations, the ALJ said Thomas was unable to perform his past work as a warehouseman and a home-health aide. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

The ALJ then moved to the fifth and final step, which requires the Social Security Administration to consider a claimant's residual functional capacity, age, education, and work experience "to see if [he] can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). Relying on the testimony of Brett Salkin, a vocational expert, the ALJ found Thomas remained able to perform a significant number of jobs in the national economy. Those jobs included food and beverage order clerk, charge account clerk, and document preparer. Thomas could adjust to and

perform those jobs, so he was not disabled under the Social Security Act and did not qualify for disability insurance benefits.

Thomas appealed to the United States District Court and raised two arguments. First, he argued the ALJ erred at step three by finding his impairments did not meet or medically equal a listed impairment. Second, he said the ALJ failed to properly weigh and credit the opinions of Dr. Hartzfeld. The district court rejected both arguments. *Thomas v. Comm'r of Soc. Sec.*, No. 5:19-cv-02548, 2021 WL 1087505 (N.D. Ohio Mar. 22, 2021).

II.

Our review of an ALJ's disability determination is limited to whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). When reviewing an ALJ's decision for legal correctness and substantial evidence, we afford no deference to the district court's ruling or reasoning. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

III.

Thomas first challenges the ALJ's step-three analysis. The Social Security Administration "has promulgated an extensive list of impairments" for consideration at step three of the five-step evaluation process. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant is presumed disabled if his or her impairments meet or medically equal one of those listings. 20 C.F.R. § 404.1520(a)(4)(iii). This appeal involves only one listing: Listing 1.03. Listing 1.03 applies when a claimant undergoes "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint," has an "inability to ambulate effectively" after the surgery, and shows a "return to effective ambulation did not occur, or is not expected to occur, within 12 months of

onset." 20 C.F.R. Pt. 404 Subpt. P., App. 1, § 1.03. Federal regulations define "inability to ambulate effectively" as "an extreme limitation of the ability to walk." *Id.* § 1.00(B)(2)(b). A claimant who's unable to ambulate effectively has "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.*

The ALJ found that Thomas's impairments did not meet or medically equal Listing 1.03 because even though he had two reconstructive hip surgeries, he resumed effective ambulation within twelve months of onset. In the months following Thomas's two hip-replacement surgeries at least two doctors documented his ability to ambulate with or without the assistance of a single cane. Assuming those doctors were correct—a proposition Thomas has not disputed on appeal— then a hand-held assistive device limited the functioning of only one of Thomas's upper extremities—the extremity holding the cane.

The district court agreed. *Thomas*, 2021 WL 1087505 at *3–4. Soon after surgery Thomas returned to walking with a single cane. *Id.* So, as a matter of law, he could not demonstrate an inability to effectively ambulate. *Id.*

Thomas accepts the ALJ's factual finding: he indubitably returned to walking with the assistance of a single cane within twelve months of onset. But unlike the ALJ and the district court, he believes Listing 1.03 doesn't require a second cane or a walker. One cane is good enough. We disagree for two reasons. First is the text. Section 1.00(B)(2)(b) defines ineffective ambulation as "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held device(s) *that limits the functioning of both upper extremities*." 20 C.F.R. Pt. 404 Subpt. P., App. 1, § 1.00(B)(2)(b) (emphasis added). A single cane limits the use of only one upper extremity, so someone (like Thomas) who ambulates with the assistance of a single cane

falls outside § 1.00(B)(2)(b)'s unambiguous definition. Reason two is persuasive authority. A panel of this court recently considered and rejected a similar argument. *See Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 930 (6th Cir. 2020) (a single cane "cannot demonstrate an inability to ambulate because a claimant must need 'hand-held assistive devices' in both hands to satisfy the definition") (quoting C.F.R. § 1.00(B)(2)(b)(1)) (alterations omitted)); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (impairment did not meet or medically equal Listing 1.03 because the claimant "used one cane at most, often went without, and could otherwise ambulate effectively during the relevant period").

## IV.

Thomas also believes the ALJ erred twice in his step-four assessment: one, in affording less than controlling weight to Dr. Hartzfeld's questionnaire responses, and two, in failing to consider the mandatory 20 C.F.R. § 404.1527(c) factors before assigning little weight to the opinions expressed in those responses. We take those arguments in turn.

## A.

First, the ALJ's decision to afford less than controlling weight to Dr. Hartzfeld's opinions. Federal regulations impose standards on how the Social Security Administration treats and weighs medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *see* 20 C.F.R. § 404.1502. Some medical opinions deserve more weight than others. "Generally, [the administration] give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). And, in the typical case, it affords even more weight—controlling weight—to opinions from "treating sources," or medical providers who have had an "ongoing treatment relationship" with the claimant. *Id.* § 404.1527(a)(2), (c)(2).

An ALJ can assign less than controlling weight to a treating-source opinion if the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or (2) is "inconsistent with" other substantial evidence in the case record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). In every instance an ALJ must "provide 'good reasons' for discounting" a treating physician's opinion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citation omitted). Those reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citation and quotations omitted).

Dr. Hartzfeld is a treating source. But the ALJ declined to afford controlling weight to Dr. Hartzfeld's 2018 questionnaire responses. He explained his decision with the following:

> Paul Hartzfield,[1] M.D. stated that the claimant had evidence of nerve root compression, although he did not refer to any specific findings aside from apparent radiculopathy (25F/2). Dr. Hartzfield said that the claimant had right triceps weakness and limited motion in his spine (25F/2). According to Dr. Hartzfield, the claimant would be off task over fifteen percent of the workday and he would need to lay down or recline one to times per workday (25F/3). Dr. Hatzfield concluded that the claimant required use and an ambulatory aid (25F/3).
>
> I do not afford controlling weight to Dr. Hartzfield's assessment. Although he treated the claimant, there was no explanation of why the claimant would be off task. Additionally, Dr. Hartzfield failed to expand upon the evidence indicating that the claimant had nerve root compression and he did not explain any findings establishing that the claimant had to lay down during the workday. Therefore, I give Dr. Hartzfield's opinion little weight.

R. 10 at PageID# 75.

At first glance the ALJ's explanation doesn't say whether Dr. Hartzfeld's questionnaire responses were well-supported by medically acceptable clinical and laboratory diagnostic

---

[1] The parties spell Dr. Hartzfeld's name differently but it is obviously the same person.

techniques, nor does it find those responses inconsistent with a substantial amount of record evidence. Even still, the ALJ provided good reasons for discounting those responses: because many were check-box, Yes/No answers with little elaboration and little reference to record medical evidence. Because Dr. Hartzfeld "failed to expand upon the evidence indicating that [Thomas] had nerve root compression," "did not explain any findings establishing that [Thomas] had to lay down during the workday," and gave "no explanation" as to why Thomas would spend 15% of the workday off task, the ALJ found those opinions undeserving of significant weight. *Id.*

We see no reversible error. An ALJ need not afford significant or controlling weight to "vague and unhelpful" treating source opinions or opinions where the treating source "failed to identify objective medical findings" to support his or her conclusions. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (citations omitted). And we have previously excused "strict compliance" with regulations when, like here, an ALJ discounted unexplained "[f]orm reports in which a physician's obligation is only to check a box[.]" *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.3d 1058, 1065 (3d Cir. 1993)). So even though the ALJ did not expressly find one of the two exceptions listed in 20 C.F.R. § 404.1527(c)(2), his analysis of Dr. Hartzfeld's conclusory questionnaire responses—and his decision to afford those responses less than controlling weight—did not rise to an error of law.

B.

If an ALJ finds a treating source's opinion undeserving of controlling weight, then, to determine how much weight is due, he must consider a nonexclusive list of factors. *See* 20 C.F.R. § 404.1527(c)(2)–(6). Those factors are (1) the length of the treatment relationship, (2) the nature and extent of the treatment relationship, (3) how well-supported the treating source's opinion is,

(4) how consistent the treating source's opinion is with the record as a whole, and (5) whether an opinion falls within the treating source's area of specialization. *Id.*

Thomas claims the ALJ "did not apply the required factors" before assigning little weight to Dr. Hartzfeld's opinions. We disagree. The ALJ said he "considered opinion evidence in accordance with" § 404.1527, and his analysis reflects that consideration. Again, he discounted Dr. Hartzfeld's opinions because they were unsupported by explanation or reference to recorded medical evidence. Supportability, or how well a treating source explains his or her opinion, is a highly relevant § 404.1527(c) factor, and the ALJ committed no legal error when he relied on that factor to discount Dr. Hartzfeld's opinions.

**AFFIRMED**.